Thomas F. CLARDY, Appellant,

v.

DUKE UNIVERSITY, a corporation, and R. Charman Carroll, Appellees.

No. 8466.

United States Court of Appeals Fourth Circuit.

Argued Jan. 10, 1962.

Decided Feb. 8, 1962.

Wallace McGregor, Washington, D. C., on the brief for appellant.

Harry DuMont, Asheville, N. C. (Uzzell & DuMont, Asheville, N. C., on the brief), for Appellee Duke University.

William C. Meekins, Asheville, N. C. (Meekins, Packer & Roberts, Asheville, N. C., on the brief), for Appellee R. Charman Carroll.

Before BOREMAN and BELL, Circuit Judges, and PREYER, District Judge.

PER CURIAM.

In this diversity action, Thomas F. Clardy charges that on and before April 1955 he was under the professional care of defendant Carroll, an employee of Duke University, and that he sustained permanent brain damage from electric shock and insulin shock therapy recommended

and administered by Dr. Carroll at Duke University Hospital as treatment for a mental disorder. Clardy complains that "about August 1957" he discovered for the first time the damage to his brain.

The complaint was filed on July 22, 1960, and summons issued on August 24, 1960. Neither defendant filed an answer but each timely moved for dismissal or, in the alternative, for summary judgment on the principal ground that the action was barred by the North Carolina statutory three-year period of limitation.[1] A hearing on the motions was scheduled for November 17, 1960, but was continued without objection upon plaintiff's request. Later, after due notice, a hearing was held by the court on May 17, 1961. Neither plaintiff nor his counsel was present. Upon full inquiry and after examining the complaint, the motions and the uncontroverted affidavit of defendant Carroll, the court granted summary judgment in favor of both defendants, finding and concluding that it appeared upon the face of the complaint that the action was barred by the statute since it was not instituted within three years after the cause of action arose. On June 12, 1961, plaintiff's counsel served and filed a "Motion for Reconsideration" praying that the court "reconsider" its summary judgment order or, alternatively, that leave be granted to file an amended complaint. On July 20, 1961, the District Court denied the motion. We perceive no error.

■ The principal question presented is whether the statute of limitation began to run on the date of the alleged injury or on the date when the injury was discovered. Under Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the District Court properly applied the decisional and statutory laws of the State of North Carolina.

■ ■ The North Carolina Supreme Court has consistently held, in applying the statutory provisions to actions involving the alleged tortious conduct of physicians and surgeons, that the cause of action arises when the alleged wrongful act is committed.[2] Plaintiff contends (1) that the rule is not applicable where there has been a fraudulent concealment from the patient of the physician's tortious conduct, and (2) that the language of the complaint is sufficient to clearly imply that defendant Carroll, as a physician, had medical knowledge which she purposely concealed. We do not agree with plaintiff's contention (2) above.

The District Court correctly held that this action is barred by the three-year statute of limitation, which period began to run at the time of plaintiff's alleged injury.

■ The motion for reconsideration prayed for leave to amend the complaint and plaintiff points to Rule 15(a) of Federal Rules of Civil Procedure, 28 U.S.C.A., to support his argument that leave should have been granted. Rule 15(a) pertinently provides that a party may amend his pleading once as a matter of course before the serving of a responsive pleading, but thereafter only by leave of the court or written consent of the adverse party. Defendants concede that the motion for summary judgment was not a pleading responsive to the complaint but Rule 12 F.R.C.P. provides for summary judgment upon motion and there is no requirement that a responsive pleading be served before moving for summary judgment. Thus, it appears that plaintiff might have amended his complaint without leave of court prior to summary judgment. However, it is not unreasonable to conclude that, by filing motion for leave to amend, Clardy concedes that he could not amend his complaint as a matter of right. If it should be held that plaintiff could amend without leave after a hearing and the granting of summary

---

1. N.C.G.S. 1–46, 1–52, subsection 5 (1953).

2. See Shearin v. Lloyd, 246 N.C. 363, 93 S.E.2d 508 (1957); Lewis v. Shaver, 236 N.C. 510, 73 S.E.2d 320 (1952); Connor v. Schenck, 240 N.C. 794, 84 S.E.2d 175 (1954). See also Summers v. Wallace Hospital, 276 F.2d 831 (9th Cir. 1960), where it appears that the North Carolina rule is in accord with the great weight of authority in this country.

judgment against him, the effect would be to clothe a litigant with the power, at any time, to reopen a case and possibly to set aside a judgment rendered against him by the court. Rule 15(a) is not to be construed so as to render Rule 12 meaningless and ineffective. The District Court correctly denied the motion for leave to amend.

Affirmed.*

---

* Counsel for plaintiff made no personal appearance before the District Court at any stage of the proceeding. Without notice, explanation or permission, he failed to appear before this court for oral argument. His display of indifference is incomprehensible and is to be severely censured. The plaintiff's case will be treated as submitted on brief. Counsel for both defendants personally appeared for argument and if they had been extended the courtesy of a notice that counsel for the plaintiff would not appear, they, had they so desired, could have submitted the case on brief and could have avoided the expense and inconvenience involved in traveling from Asheville, North Carolina, to Richmond, Virginia.