Millie JENNINGS, Special Administratrix
of the Estate of Janet Lynn Lewis,
Deceased, Appellant,

v.

STATE of Alaska, Appellee.

No. 2658.

Supreme Court of Alaska.

July 22, 1977.

John F. Rosie, Fairbanks, for appellant.

Sanford M. Gibbs, Hagen, Smith & Brown, Anchorage, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR and BURKE, JJ.

1. On this point, the amended complaint reads:
 While in a stopped position, in the outside lane, Defendant Elizabeth Lyons waved the deceased, Janet Lynn Lewis, age 7, across College Road and into the path of a car travelling in the inside lane driven by Defendant Bjarne Aune.

2. The amended complaint also alleged claims in negligence for relief against Ms. Lyons, Bjarne

RABINOWITZ, Justice.

This appeal is from the superior court's grant of summary judgment in favor of the State of Alaska in litigation involving the alleged wrongful death of Janet Lewis, a 7-year-old student at the Joy School in Fairbanks.

The amended complaint alleged the following factual situation: After school on December 7, 1971, Janet Lewis and a schoolmate were about to cross College Road, a four-lane highway in a suburban section of Fairbanks. Elizabeth Lyons, a named defendant below, stopped her car and motioned for the children to cross.[1] Several cars stopped behind Ms. Lyons in the outside lane, but defendant Bjarne Aune, approaching the scene on the inside lane of College Road, struck and killed Janet Lewis.

The amended complaint further alleged that the State of Alaska[2] was negligent in its failure to adequately provide for the safety of the children of Joy School. More particularly, it was alleged that the State of Alaska

> had received numerous complaints regarding inadequate safety precautions and hazards regarding children attending Joy School and their attempts to cross College Road

and further that the State of Alaska

> failed to take any action whatever that had any overall effect on the safety of the pupils attending Joy School and as a result of their negligence in failing to provide an overpass and to meet other requests which were made of them, Janet Lynn Lewis was killed attempting to cross College Road.

Aune, Chris Olsen (who was in a truck parked to the side of College Road), and the North Star Borough. This appeal concerns only the State of Alaska. The claims against Lyons and Aune have been settled and the claim against Olsen dismissed. The litigation against the Borough was continuing at the time of this appeal.

In its answer, the State of Alaska denied the allegations of the amended complaint and advanced six affirmative defenses, the most significant of which asserts that the negligence alleged was based on a discretionary function for which the state was immune from suit.[3]

On November 22, 1974, attorney Rosie[4] filed, on behalf of the special administratrix, a request for production of certain documents from the state and the North Star Borough. The state filed objections to this request on December 23, 1974, grounded on its belief that some of the requested items were irrelevant and that the requests were so broadly stated that it would be an unreasonable burden on the state to produce the information. The state specifically objected to production of material relating to other accidents on College Road involving children on the basis of a possible privilege. The state filed a motion for summary judgment March 24, 1975, alleging that no genuine issue of fact existed and, as a matter of law, it was entitled to judgment because either (1) the discretionary function clause of AS 09.50.250[5] barred the claim or (2) the alleged negligence on the part of the state was not the proximate cause of the accident. On April 22, 1975, the same day

that she filed her statement of genuine issues and opposition to the motion for summary judgment, the special administratrix filed a motion requesting the superior court to issue an order compelling discovery from the state. On May 6, Judge Warren W. Taylor issued a Memorandum Decision, granting the state's motion for summary judgment and finding that the discretionary function exception to the waiver of sovereign immunity barred the suit, since "any governmental action that occurred [in this case] occurred at the planning as opposed to the operational level."[6]

On May 16, 1975, the special administratrix moved to vacate the Memorandum Decision and for reconsideration of the state's motion for summary judgment. This motion was based on three factors: (1) the state's refusal to cooperate in discovery had hampered the special administratrix's attempt to discover evidence which would show the existence of a disputed material fact; (2) there was a misunderstanding between the state, the special administratrix and the superior court as to the actual claim of negligence asserted against the state; and (3) Civil Rule 56 "envisions a hearing on the motion before it is decided."[7] On

---

**3.** AS 09.50.250 which waives the state's sovereign immunity, provides, in relevant part:

Sec. 09.50.250. Actionable claims against the state. A person or corporation having a contract, quasi-contract, or tort claim against the state may bring an action against the state in the superior court. . . . However, no action may be brought under this section if the claim

(1) is an action for tort, and is based upon an act or omission of an employee of the state, exercising due care, in the execution of a statute or regulation, whether or not the statute or regulation is valid; or is an action for tort, and based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion involved is abused.

The other affirmative defenses which the state asserted were: (1) the negligence of others, not the state, was the proximate cause of any damage, (2) the plaintiff did not comply with conditions precedent to suit against the state, (3) Ms. Lewis was contributorily negligent, (4) the complaint failed to state a claim upon which relief may be granted, and (5) the parents of Ms. Lewis had released all persons

chargeable with responsibility or liability in the matter.

**4.** Thomas Curran, plaintiff's original attorney, died November 9, 1974. The order effectuating substitution of counsel was not entered until April 10, 1975.

**5.** See note 3, *supra.*

**6.** In its *Memorandum Decision,* the superior court stated:

The court has reviewed the pleadings herein and has concluded that any governmental action that occurred herein occurred at the planning as opposed to the operational level. Therefore, as a matter of law, the defendant State of Alaska is immune from liability under the facts as presented herein. . . . The facts of the instant case clearly illustrate the type of governmental conduct which was intended by the legislature to be immunized from liability.

**7.** At that time, subsection (c) of Rule 56 provided:

(c) Motion and Proceedings Thereon. The motion shall be served at least 10 days before

May 22, 1975, Judge Taylor stated that he was persuaded by the motion but wanted to hear what the state would say in opposition. Thus, he set hearing on the motion to vacate for June 12, 1975. Argument was heard on that date and Judge Taylor took the motion under advisement. On June 17, Judge Taylor issued a Memorandum Decision denying the motion to vacate his prior decision and stating:

If the Plaintiff has newly discovered evidence sufficient to base a cause of action against the State, then it might be appropriate for the Plaintiff to seek to amend its complaint. On the basis of the pleadings as they presently stand, however, the Court finds that the State is immune from liability for reasons previously stated in the Court's May 6, 1975, Memorandum Decision.

On June 30, 1975, the special administratrix filed a motion to amend her amended complaint. As the proposed amendment related to the state, it would have alleged negligence in failing to post the appropriate signs in the area, in the maintenance and design of the area which was known to be a hazardous crossing area, and in not designating College Road a hazardous route. Prior to the hearing of this motion, on July 3, 1975, Judge Van Hoomissen[8] signed a judgment dismissing the complaint against the state with prejudice.[9] Jennings appeals from that dismissal with prejudice.

In order to understand the allegations of negligence asserted against the State of Alaska, it is necessary that the location of the scene of the accident in relation to the situs of the Joy School be delineated. The Joy School is not located adjacent to College Road; it is located on Joy Street several hundred feet from the intersection of Joy Street and College Road. That intersection has a crosswalk and an electronically controlled traffic signal. During the times when most of the children in the neighborhood are either going to or coming from school, there is usually a crossing guard at the intersection of Joy School and College Road.[10] Since this area of College Road was not designated a school zone,[11] the posted speed limit on College Road for the area west of Joy Street was 40 miles per hour. From the direction that the Aune vehicle approached, the posted speed limit on College Road was 30 miles per hour. On the day of the accident, Janet Lewis did not use the crosswalk at the intersection of Joy Street and College Road. She was struck and killed while attempting to cross College Road between Mary Leigh Street and Bridget Street, where she lived.[12] The

the time fixed *for the hearing,* and may be supported by affidavits setting forth concise statements of material facts made upon personal knowledge. There must also be served and filed with each motion a memorandum showing that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The adverse party not later than two days *prior to the hearing* may serve opposing affidavits, a concise 'statement of genuine issues' setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, and any other memorandum in opposition to the motion. Judgment shall be rendered forthwith if the pleadings, depositions and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages. Summary judgment, when appropriate, may be rendered against the moving party. (emphasis added)

8. Judge Taylor was on vacation at the time.

9. This judgment was entered pursuant to Civil Rule 54(b) and contained an express determination that there was no just reason for delay.

10. In her deposition the child's mother stated that it was difficult to hire crossing guards after the weather became cold. However, Chris Olsen saw a person with a "School Crossing" sign come to the scene of the accident form the direction of the intersection.

11. 13 AAC 10.300 provides:
 *School zone.* In the traffic regulations 'school zone' means a territory, including a highway, adjacent to a public or private school or school grounds, or any other area so designated by state or local authority.

12. On December 7, Janet Lewis presumably crossed the back of the Joy School yard, climbed over a fence or passed through a gate which was usually left open into a parking lot of the B & M Market, and proceeded along the B & M Market to the sidewalk adjacent to College Road.

point of impact was several hundred feet from the intersection of College Road and Joy Street. A rough sketch of the area, not drawn to scale, follows:

In this appeal the special administratrix advances three separate specifications of error committed by the superior court. First, the administratrix claims that the superior court erred

in holding that providing an overpass or employing other devices to protect the children in their attempt to cross College Road to attend the Joy School was a discretionary function of the State, the breach of which would not render the State liable in damages for the death of a child crossing College Road on his way home from school.

Secondly, the administratrix specifies:

The Superior Court erred and abused its discretion in entering judgment for the State of Alaska and dismissing the Appellant's Complaint with prejudice without first providing the Appellant an opportunity to amend its Complaint so as to state a cause of action against the State of Alaska if possible under the set of facts presented to the Court.

The administratrix's final specification of error asserts:

The Superior Court erred and abused its discretion in entering the judgment dismissing appellant's claim against the State with prejudice without first ruling on Appellant's motion to compel discovery from the State of Alaska.

These specifications of error will be discussed seriatim.

At the time of this litigation, Civil Rule 56(c) provided, in part:

Judgment shall be rendered forthwith if the pleadings, depositions and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

In order to prevail on a motion for summary judgment, a party must show the absence of an issue relating to any material fact and entitlement to judgment as a matter of law. If there is any genuine issue of material fact to be tried, a grant of summary judgment would deprive the party of his or her right to a jury trial on that issue of

fact.[13] Thus, we have declared that the burden of showing the absence of a genuine issue of fact is on the movant.[14]

In its memorandum accompanying the motion for summary judgment, the state contended that, as a matter of law and based on the evidence that had been adduced to that point, "the plaintiff [had] not stated a cause of action upon which relief could be granted against the state." In response, defendant Lyons and the special administratrix Jennings submitted statements of genuine issues.[15] Neither submitted affidavits nor did they submit any sworn items which would show the superior court how they planned to support their position on those issues with facts which would be admissible at trial.[16] The state claims that, as a matter of law, Jennings' opposition did not comply with the requirements of Civil Rule 56(e)[17] and thus, summary judgment was properly granted. That contention is not well founded.

Affidavits either in support of, or in opposition to, a summary judgment motion are permissive not mandatory.[18] Nevertheless, we have stated that once the movant satisfies his burden of establishing an absence of genuine issue of material fact and its right, on the basis of the undisputed facts, to judgment as a matter of law, the non-movant is

> required, in order to prevent entry of summary judgment, to set forth specific facts showing that he could produce admissible evidence reasonably tending to dispute or contradict the [movant's] evidence, and thus demonstrate that a material issue of fact exist[s].[19]

This standard with respect to admissibility of evidence has led us to conclude that assertions of fact in unverified pleadings and memoranda cannot be relied on in de-

13. *See* 10 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2714, at 411–15 (1973).

14. *E.g., Ransom v. Haner,* 362 P.2d 282, 290 (Alaska 1961). In *Isler v. Jensen,* 382 P.2d 901 (Alaska 1963), we held that once the movant has demonstrated that there is no genuine issue of fact, the non-movant, in order to prevent the entry of summary judgment, must set forth facts, admissible in court, which would tend to dispute the movant's evidence, and thus demonstrate that a triable issue of fact exists. *See also Hickel v. Stevenson,* 416 P.2d 236, 237–38 (Alaska 1966).

15. The statement of genuine issues filed by appellant reads, where relevant:

 1. Did the State of Alaska have the duty to mark College Road in such a manner as to warn motorists that a school zone was in the area?
 2. If the State had such a duty did it breach that duty by failing to properly and sufficiently mark College Road to identify a school crossing area?
 3. Did the State have a duty to provide for the safe conduct of school children along a known hazardous route pursuant to AS 14.-09.010?
 4. If the State had a duty to provide safe conduct for school children did it break that duty by failing to provide a safe means for school children to get from one side of College Road to the other?

16. *See McKean v. Hammond,* 445 P.2d 679 (Alaska 1968).

17. Alaska Civil Rule 56(e) provides:

 (e) Form of Affidavits—Further Testimony—Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits. *When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.* (emphasis added)

18. Alaska Civil Rule 56(c) uses the term "may" rather than "shall." *Accord,* 10 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2722, at 483 (1973).

19. *Howarth v. First Nat'l Bank of Anchorage,* 540 P.2d 486, 489–90 (Alaska 1975). In *Howarth,* the non-movant filed a statement of genuine issues and, in support of his contentions of a genuine issue, he referred to portions of a deposition on file. This was adequate in the view of the court.

nying a motion for summary judgment.[20] Similarly, allegations of fact made by counsel in oral argument do not satisfy the burden of Rule 56(e), since unsworn testimony should not be considered.[21]

 Since no affidavits were presented to the court in the case at bar, the burden provided in Rule 56(e) to "set forth specific facts showing that there is a genuine issue for trial," must have been reached in ways "otherwise provided in this rule." Subsection (c) refers to the "pleadings, depositions and admissions on file" as other devices used to show a genuine issue of fact. Professors Wright and Miller set forth the following guidelines for use of such materials:

The formal issues framed by the pleadings are not controlling on a motion for summary judgment; the court must consider the issues presented by the other material offered by the parties on the motion to determine whether the Rule 56 request should be granted. Thus the court will examine the pleadings to ascertain what issues of fact they present and then consider the affidavits, depositions, admissions, answers to interrogatories and similar material to determine whether any of these issues are real and genuine and whether any of the post-pleading material suggests the existence of any other triable genuine issues of material fact. The parties need not formally offer their outside matter as evidence or have it marked as an exhibit at the hearing on the motion. Given this process, the court is obliged to take

account of the entire setting of the case on a Rule 56 motion.[22] (Footnotes omitted)

In concluding that "any governmental action that occurred . . . occurred at the planning as opposed to the operational level," the superior court limited its review of the case at bar to the pleadings. Even though the parties did little to call the superior court's attention to other items, including the three depositions on file, the superior court should have gone outside the pleadings to consider the entire setting of the case to the extent that the material was brought to the court's attention by the parties on the motion.[23] In order to determine whether this error was harmless, we think it necessary to consider what facts the superior court would have found had it gone outside the pleadings.

Defendant Lyons referred the superior court to portions of the deposition of Jerry Lee Lewis in which he claimed that the state had been notified of the conditions on College Road which were hazardous to the school children of Joy School. The deposition further asserted that "no overpass had been installed, no school warning sign erected, no lower speed limit enforced, and no additional crosswalk or traffic light installed."

 These are specific facts appearing in the record which were called to the superior court's attention in opposition to the motion for summary judgment. Since the party asserting that there is no genuine issue of material fact is the State of Alaska, these

---

**20.** *Brock v. Rogers & Babler, Inc.,* 536 P.2d 778, 783 (Alaska 1975); *Braund, Inc. v. White,* 486 P.2d 50, 54 (Alaska 1971).

**21.** *See* 10 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2723, at 488–90 (1973).

**22.** *Id.* § 2721, at 475–76.

**23.** The approach used by the trial court turned *the motion into a request for judgment on the* pleadings. Alaska Civil Rule 12(c) provides: (c) Motion for Judgment on the Pleadings. After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings,

matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. The standard required for both motions is the same, *i.e.,* that there is no triable issue of fact and that inferences are taken against the moving party. Neither motion will be granted unless the movant is entitled to judgment as a matter of law. *See Nizinski v. Golden Valley Elec. Ass'n, Inc.,* 509 P.2d 280, 283–84 (Alaska 1973); 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1369, at 700 (1969).

facts must be viewed in the light most favorable to the special administratrix.[24] Nevertheless, even accepting these specific allegations of fact which were presented to the superior court as true, we conclude that the superior court did not err in granting summary judgment in favor of the State of Alaska. We thus hold that the state's alleged failures in not providing an overpass, not lowering the speed limit, not posting school warning signs, and not providing additional controlled crossings on College Road, come within the ambit of the discretionary function exception to the waiver of sovereign immunity of AS 09.50.250.[25]

We have been called upon to interpret the discretionary function exception on several occasions.[26] In *State v. Abbott,* 498 P.2d 712 (Alaska 1972), and reaffirmed in *State v. I'Anson,* 529 P.2d 188 (Alaska 1974), we adopted the planning-operational test in determining whether a particular governmental function was within or without the ambit of the discretionary function exception to governmental tort liability. In light of Alaska's decisional law on the sub-

ject of the discretionary function exception, the special administratrix claims:

> When making its ruling on the State's claims to discretionary function immunity, the Superior Court misapplied the principles of *State v. Abbott* and *State v. I'Anson.*

In its decision, the superior court recognized that liability is the rule to which immunity is the exception, but found immunity in this case because, as it perceived the situation, any alleged negligence on the state's part occurred at the planning level rather than at the operational level.[27] As indicated previously, we are of the opinion that the superior court correctly analyzed the character of the governmental function in question.[28] More particularly, we are of the view, and so hold, that decisions whether or not to build one or more overpasses in the area of the intersection of College Road and Joy Street, whether or not to designate the subject intersection area as a school zone, and whether or not to undertake any other safety measures at the intersection in question or at other areas of College Road,

---

**24.** *Nizinski v. Golden Valley Elec. Ass'n, Inc.,* 509 P.2d 280, 283 (Alaska 1973).

**25.** See note 3, *supra,* for the text of AS 09.50.-250.

**26.** *E.g., State v. Guinn,* 555 P.2d 530 (Alaska 1976); *Adams v. State,* 555 P.2d 235 (Alaska 1976); *State v. I'Anson,* 529 P.2d 188 (Alaska 1974); *State v. Abbott,* 498 P.2d 712 (Alaska 1972).

In *I'Anson* and *Abbott* we reviewed the history and purpose of the discretionary function exception to the waiver of sovereign immunity.

**27.** In part, the superior court reasoned as follows:

> Had the State of Alaska built a crosswalk and it turned out to be defective in some way then certainly it would be liable for its negligence. By the same token had the State of Alaska determined to place a crosswalk for school children crossing College Road between Bridget and Mary Leigh Street and in so doing had in some way acted negligently, then again the State would be subject to liability for its negligence. In the instant case, however, the State took neither of the aforementioned actions and apparently determined to take no action at all in this particular case. . . . The statute provides, however, that immunity exists for the exercise or performance or the failure to exercise or perform a discretionary function or duty.

**28.** In our analysis of this issue we note that 13 AAC 10.300, set out in full at note 11, *supra,* provides that a "school zone includes the area adjacent to a school or its grounds, or any other area so designated by the state or local authority." The immediate area of the intersection of College Road and Joy Street was not adjacent to a school or its grounds nor had it been designated a school zone. Thus, the 30 and 40 miles per hour speed limits were within the guidelines of 13 AAC 02.275. Had the state declared that this area of College Road should be designated a school zone, 13 AAC 02.310 would have mandated a maximum speed limit of 20 miles per hour. 13 AAC 02.310 provides:

> *Maximum Speed Limit When Passing School or Playground Crosswalk.* Subject to sec. 275(a) of this chapter and except in an instance where a lower maximum lawful speed is provided, a person may not operate a vehicle at a speed in excess of 20 miles per hour, either inside or outside a city or village when passing a marked public or private school or playground crosswalk that is posted with an official school, school crossing or speed control sign. The speed zone at the crosswalk extends 300 feet in either direction from the marked crosswalk.

were governmental decisions which have rightly been characterized as planning level decisions, and thus within the ambit of the statutorily created discretionary function exception to the state's tort liability.[29]

In light of the pleadings and depositions which were on file at the time appellee moved for summary judgment, we are of the opinion that the superior court correctly concluded that the asserted negligent failures of the State of Alaska came within the discretionary function exception to governmental liability under AS 09.50.250. Of controlling significance, in our view, is the fact that the child was struck by the Aune vehicle at a point some three blocks away from the intersection of College Road and Joy Street. Given the further fact that the Joy School is located a considerable distance from College Road, and the circumstance that the accident occurred at a location far removed from the intersection of Joy Street and College Road, decisions whether or not to construct overpasses at the situs of the accident or at other locations along College Road or to have undertaken other traffic control measures in that area of College Road are the type of "broad policy matters" which are committed to the discretion of the executive branch of Alaska's government.[30]

■■■■ The special administratrix's second specification of error alleges that the superior court erred in dismissing her amended complaint with prejudice without providing her an opportunity to further amend her amended complaint.[31] There is no amendment as of right after the grant of a summary judgment motion. *See Clardy v. Duke University*, 299 F.2d 368, 369–70 (4th Cir. 1962). Since a motion for summary judgment is on the merits, courts are normally reluctant to allow amendments after summary judgment motions. *See Freeman v. Continental Gin Co.*, 381 F.2d 459, 469–70 (5th Cir. 1967). The superior court's reasons for not allowing further amendment of the amended complaint are not present in the record. Additionally, it was apparent that Judge Taylor would have allowed an amendment which was based on newly discovered evidence. In her memorandum accompanying the motion to amend the complaint, Jennings stated:

> As to the STATE OF ALASKA, the Plaintiff will allege negligence concerning the posting of appropriate signs in the area, negligence in the maintenance and design of an area known to be a hazardous route and thereafter providing transportation, or otherwise assuring safe passage of Joy School children across College Road.

As our decision today makes clear, a claim for relief against the state for failing to designate the area as a hazardous route or for improperly designing and maintaining the crossing area is barred by the discretionary function exception to the waiver of

---

**29.** *Compare Adams v. State*, 555 P.2d 235 (Alaska 1976), in which the discretionary act was described.

**30.** We note that this case is factually distinguishable from the cases in which we have held that the state's action was at the operational rather than planning level. For example, in *State v. Abbott*, 498 P.2d 712, 722 (Alaska 1972), we noted that the initial policy decision that the highways should be maintained is a planning level decision, but the day to day decisions in carrying out that policy decision are operational. Similarly, in the case at bar, had the planning level decision been made to delineate this area a school zone and then the state negligently signed the area or negligently constructed a crosswalk, a cause of action might have arisen against the state for these negligently performed operational level acts. We recognize that almost all decisions made by

state employees involve some element of discretion, but not all of those "discretionary" acts rise to the level that warrants sovereign immunity from liability. We find that the acts alleged in this case were properly classified as planning level acts.

**31.** When Judge Taylor heard Jennings' motion to vacate, he stated:

> If the Plaintiff has newly discovered evidence sufficient to base a cause of action against the State, then it might be appropriate for the Plaintiff to seek to amend its complaint.

The special administratrix did attempt to amend but prior to the time her motion was heard, Judge Van Hoomissen, while Judge Taylor was on vacation, signed a judgment dismissing the amended complaint with prejudice.

sovereign immunity. However, we also note that pursuant to *State v. I'Anson*, 529 P.2d 188 (Alaska 1974), a failure to properly sign an area is at times actionable as an operational level activity. On balance, given the statement in Judge Taylor's Memorandum Decision, we think the motion which had been filed for leave to amend should have been heard before the judgment dismissing the complaint with prejudice was entered. Since it is not apparent on the face of the record that Judge Van Hoomissen was even made aware of the administratrix's attempt to amend pursuant to Judge Taylor's Memorandum Decision, we hold that the dismissal with prejudice before hearing the motion to amend constituted an abuse of discretion.[32]

 Appellant's third specification of error alleges that the superior court erred in dismissing the amended complaint with prejudice without first requiring the state to comply with her request for production. The basis of the special administratrix's specification of error seems to be that because the State of Alaska had not complied with the request for production, she was unable to adequately oppose the state's motion for summary judgment. The special administratrix maintains that her motion to compel discovery and the statements in opposition to the state's motion for summary judgment were sufficient to be considered a Rule 56(f)[33] motion for additional time. We find this argument devoid of merit. As Professors Wright and Miller state:

Rule 56(f) protects a party opposing a summary judgment motion who for valid reasons cannot by affidavit—or presumably by any other means authorized under Rule 56(e)—present 'facts essential to justify his opposition' to the motion. Under the rule *a party who seeks the protection of subdivision (f) must state by affidavit* the reasons why he is unable to present the necessary opposing material and the court then may (1) refuse to grant summary judgment, (2) order a continuance to permit affidavits to be taken or discovery to be had, or (3) 'make such other order as is just.'[34] (emphasis added)

Although requests made pursuant to Rule 56(f) should be freely granted, it is necessary that the party make it clear to the trial court and the opposing party that he opposes the summary judgment motion on this ground. As Professors Wright and Miller note:

However, the rule will not be liberally applied to aid parties who have been lazy or dilatory. The most obvious indication of lack of diligence is a failure on the part of the nonmovant to present affidavits under either subdivision (e) or (f). In this situation the court may accept the facts alleged in the movant's affidavits as true, and if they constitute a sufficient basis for summary judgment, the motion will be granted. Even in cases in which

**32.** It has been brought to our attention that since this matter has been on appeal further proceedings have been held in the superior court. Specifically, it appears that appellant filed a Second Amended Complaint which the State of Alaska moved to dismiss. On December 3, 1976, the superior court issued a Memorandum Decision and Order in which it granted the state's motion to dismiss, although appellant contended that in her Second Amended Complaint she adduced new theories of recovery. The superior court dismissed the complaint on this rationale:

Since each 'new' allegation in Plaintiff's Second Amended Complaint has been presented to the Supreme Court, by Appellate Rule 6, jurisdiction over this case lies with the Supreme Court. Accordingly Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint is granted.

On remand the superior court should rule on any motion to dismiss the Second Amended Complaint or motion for summary judgment by the state on the merits, since upon remand it will possess jurisdiction over such matters.

**33.** Alaska Civil Rule 56(f) provides:

When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

**34.** 10 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2740, at 722–23 (1973).

the movant has not met the initial burden of showing that he is entitled to summary judgment, and therefore no opposition to the motion is necessary, the Supreme Court has stated that compliance with either Rule 56(e) or Rule 56(f) is preferable and inaction on the part of the non-moving party is perilous. Similarly, relief under Rule 56(f) cannot be sought for the first time on appeal, although the courts have not specifically cited the rule in articulating this point.[35] (footnotes omitted)

In the case at bar, not only did the special administratrix fail to submit any affidavits in opposition to the summary judgment motion, but also there is no mention made of subsection (f) of Rule 56 in the special administratrix's opposition to the state's motion for summary judgment. Given these circumstances, we conclude that the superior court did not abuse its discretion in ruling on the state's motion for summary judgment without first requiring the state to comply with the special administratrix's request for production.

Affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion.

ERWIN, J., not participating.

BURKE, Justice, dissenting in part.

I respectfully dissent with respect to the majority's holding that it was an abuse of discretion for the superior court to dismiss appellant's complaint with prejudice before a hearing was held on her motion to amend.

According to her memorandum filed in support of such motion, appellant indicated:

> As to the STATE OF ALASKA, the Plaintiff will allege negligence concerning the *posting of appropriate signs* in the area, negligence in the *maintenance and design* of an area known to be a hazardous crossing area, as well as negligence in *not having College Road designated as a hazardous route and thereafter providing transportation,* or otherwise assuring safe passage of Joy School children across College Road. (emphasis added)

Thus amended, the complaint would, at most, allege only additional "planning level" failures on the part of the state. Therefore, I would affirm the judgment of the court below. Rule 15(a), Alaska R.Civ.P., does not require the trial court to indulge in futile gestures. Where a complaint, as amended, would be subject to dismissal on the same grounds upon which the initial complaint was dismissed, leave to amend should be denied. *DeLoach v. Woodley,* 405 F.2d 496, 497 (5th Cir. 1968).

Otherwise, I concur.