Robert N. WAINSCOTT, Appellant,

v.

STATE of Alaska, Appellee.

No. 5523.

Supreme Court of Alaska.

April 16, 1982.

Joel D. DiGangi and Patrick Brown, Rice, Hoppner, Brown & Brunner, Fairbanks, for appellant.

Kenneth P. Jacobus and Joe M. Huddleston, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

BURKE, Justice.

This case arises from a traffic accident which occurred on June 5, 1976, at the intersection of O'Malley Road and the New Seward Highway. Robert Wainscott's daughter, Deborah K. Wainscott, was traveling as a passenger in a Volkswagen "Super Beetle" operated by Richard Erickson, Jr. Erickson was driving west on O'Malley Road, intending to cross New Seward to purchase gasoline at a station nearby. At that time, the intersection was monitored by a flashing red light and stop sign on O'Malley, and a flashing yellow light on New Seward. According to Erickson, he made a complete stop before venturing into the intersection. Approximately halfway through the intersection, the Volkswagen collided with a light truck traveling south on New Seward. Deborah Wainscott was thrown from the car, sustaining injuries which later caused her death.

Robert Wainscott filed a wrongful death action against the state, alleging that it negligently failed to equip the intersection with a sequential red, amber and green traffic signal. The state moved twice for summary judgment. In its second motion, it claimed: (1) that selecting the traffic control mechanism for the intersection constituted a discretionary function within the meaning of AS 09.50.250, thereby conferring sovereign immunity on the state; and (2) that there was no negligence because transportation officials had complied with certain federal and state traffic control manuals in the installation of the signal in

question. Because of our disposition of the immunity issue, we do not address the negligence question.

AS 09.50.250 provides that the state is not liable for claims arising from the exercise of a "discretionary function or duty" on the part of a state employee.[1] The purpose of this exception to the general rule of liability is "to preserve the separation of powers inherent to our form of government by recognizing that it is the function of the state, and not the courts or private citizens, to govern." *Japan Air Lines Co. v. State*, 628 P.2d 934, 936 (Alaska 1981). Thus, the discretionary function exception seeks to ensure that the government is free to govern without interference from the courts or private citizens. *Id.; Adams v. State*, 555 P.2d 235, 244 (Alaska 1976). The exception also recognizes that courts are ill-equipped to investigate and balance the numerous factors that go into an executive or legislative decision. *State v. I'Anson*, 529 P.2d 188, 193 n.20 (Alaska 1974); *State v. Abbott*, 498 P.2d 712, 721 (Alaska 1972).

Not all decisions involving an element of discretion, however, fall within the discretionary function exception. As numerous courts have recognized, even the most ministerial of tasks involves some degree of discretion. *See Jennings v. State*, 566 P.2d 1304, 1312 n.30 (Alaska 1977);

*Johnson v. State*, 69 Cal.2d 782, 73 Cal.Rptr. 240, 245, 447 P.2d 352, 357 (1968) (it is difficult to conceive of any act that does not admit of some discretion, even if it involves only the driving of a nail). Rather, the exception applies and immunity attaches when a decision entails governmental planning or policy formulation. *Japan Air Lines Co. v. State*, 628 P.2d 934, 936 (Alaska 1981); *State v. I'Anson*, 529 P.2d 188, 193–94 (Alaska 1974). A decision or action which merely implements a preexisting policy is considered operational in nature, undeserving of protection under the discretionary function exception. *State v. I'Anson*, 529 P.2d 188, 194 (Alaska 1974). Thus, the distinction is "between basic policy formulation, which is immune, and the execution or implementation of that basic policy, which is not immune." *Japan Air Lines Co. v. State*, 628 P.2d 934, 936 (Alaska 1981).[2]

We recognize that this "planning level—operational level" test is somewhat inexact. Nonetheless, it offers the advantage of focusing on the reasons for granting immunity to the state. *See State v. Abbott*, 498 P.2d 712, 721 (Alaska 1972). In applying the test, courts are required to isolate those decisions sufficiently sensitive so as to justify judicial abstention. In this fashion, the test serves to protect those decisions worthy of protection without extending the cloak of immunity to an unwise extent.[3]

1. The relevant text of AS 09.50.250 is as follows:

   A person or corporation having a contract, quasi-contract, or tort claim against the state may bring an action against the state in the superior court.... However, no action may be brought under this section if the claim (1) is an action for tort, and is based upon ... the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion involved is abused....

   This language is substantially similar to that contained in the Federal Tort Claims Act, 28 U.S.C. § 2680(a) (1976).

2. Our cases illustrate this distinction. In *Japan Air Lines Co. v. State*, 628 P.2d 934, 938 (Alaska 1981), we held that once the basic policy decision to build a runway capable of accomodating wide body jets was made, negligence in designing such a runway constituted an operational level act not entitling the state to immunity. And, in *Jennings v. State*, 566 P.2d 1304, 1311 (Alaska 1977), we held that the state's

alleged negligence in not providing an overpass, not lowering the speed limit, and not posting school warning signs came within the ambit of the discretionary function exception as planning level acts.

3. This is not to say that the planning—operational dichotomy always serves to identify those areas where immunity should or should not apply. In California, where the planning—operational gloss to the discretionary function exception also exists, *Johnson v. State*, 69 Cal.2d 782, 73 Cal.Rptr. 240, 447 P.2d 352 (1968), the legislature has enacted a comprehensive statute dealing with the issue of governmental immunity which, while retaining the discretionary function exception, specifies certain individual government activities which are afforded immunity independent of the general exception such as failure to enforce any law, issuance or failure to issue a permit, failure to inspect or negligent inspection of property, or failure to provide fire protection service. *See* California Government Code § 814 *et seq.*, §§ 818.2, 818.4, 818.6, 850. Failure to provide

■ Applying these principles to the case at hand, we conclude that the decision to install flashing red and yellow lights in lieu of a sequential traffic signal constituted a planning level decision.[4] There are undoubtedly numerous intersections throughout the state where known traffic hazards could be significantly reduced by the installation of more sophisticated traffic control devices. Available funding, however, requires that the Department of Transportation select among these locations in deciding where to make improvements. To that end, the department first prepares a priority list of safety projects. The regional list is forwarded to the statewide traffic engineer who reviews all the regional reports and ranks the various projects in order of importance. Thus, the several regions compete for the available money, with only a percentage of the proposed projects eventually being funded.

In respect to the New Seward-O'Malley intersection, the Department knew in 1975 that the master development plan for the New Seward Highway called for the construction of an overpass in 1978. When completed, such an overpass would render a fairly expensive sequential signal obsolete. The Department also recognized that the New Seward Highway was the sole high speed access route to south Anchorage. An analysis of traffic flow patterns persuaded the department that a sequential signal would seriously interfere with the flow of traffic to and from Anchorage. Finally, the department was concerned that a sequential traffic signal might create additional traffic hazards.[5] For these reasons, the department decided not to install a sequential signal at the New Seward-O'Malley intersection.

If we were to assess the propriety of this decision, we would be engaging in just the type of judicial review that the discretionary function exception seeks to prevent. The selection of a traffic control device for the New Seward-O'Malley intersection was not a purely ministerial decision implementing a preexisting policy, but rather a decision that called for policy judgment and the exercise of discretion. In opting to retain the red and yellow flashers, the department considered the long term development plan for the New Seward Highway, the disruptive effect that a sequential signal might have on traffic flow, and the need to address more pressing safety problems elsewhere.[6] We therefore hold that the department's selection of the traffic control mechanism came within the ambit of the discretionary function exception, entitling the state to immunity under AS 09.50.250. Accordingly, the decision below is AFFIRMED.

---

traffic control signals or signs may not subject the government entity to liability in California under § 830.4 of the Government Code.

4. We emphasize that Wainscott's sole theory of negligence relates to the selection of the traffic control mechanism for the intersection. Wainscott does not allege, and the record does not suggest, that the department negligently designed or improperly positioned the red flashing stop light. Were this the case, there might be negligence on an operational level, actionable under AS 09.50.250.

5. The department felt that a sequential signal might create the potential for a serious chain-reaction accident. Vehicles stopped at such a signal would back up a small hill lying just south of the intersection. Vehicles cresting the hill at 55 miles per hour might thus be confronted with a stationary line of vehicles.

6. The allocation of scarce resources usually involves an evaluation of policy considerations and some long term planning. *See Bearce v. United States*, 614 F.2d 556, 561 (7th Cir. 1980). In *Bearce*, the court held that the Coast Guard's decision not to place a warning light on a harbor breakwater constituted a discretionary act, conferring sovereign immunity under 28 U.S.C. § 2680(a) (1976). Initially the court noted that the Coast Guard had a priority list of safety projects which had yet to be funded. The court continued that: "In view of budgetary constraints, the Coast Guard cannot implement every recommendation its regional offices may make. The allocation of funds for the construction of new aids to navigation requires policy judgments concerning the public interest, and thus is a discretionary function which courts should not review in the context of a tort claim." *Bearce v. United States*, 614 F.2d 556, 561 (7th Cir. 1980).