INDUSTRIAL INDEMNITY
COMPANY, Appellant,

v.

STATE of Alaska, Appellee.

No. 6251.

Supreme Court of Alaska.

Sept. 9, 1983.

Paul W. Waggoner, Biss & Holmes, Anchorage, for appellant.

Joe M. Huddleston, Kenneth P. Jacobus, James F. Klasen, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellee.

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and DIMOND, Senior Justice.*

---

* Dimond, Senior Justice, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

## OPINION

RABINOWITZ, Justice.

On January 2, 1977, while acting in the scope of his employment, John Richey was killed when his vehicle left the road near Long Lake at Mile 86.4 of the Glenn Highway. Industrial Indemnity Company of Alaska paid workers' compensation benefits to Richey's wife and brought this action against the State of Alaska under AS 23.-30.015 [1] and the Alaska Tort Claims Act, AS 09.50.250–.300.

The complaint alleged that the state's negligence was the proximate cause of Richey's death. Various specific acts and omissions were referred to as constituting actionable negligence in the complaint, including the failure to install a protective guardrail at the accident site.[2]

The state moved for partial summary judgment, claiming that its admitted failure to install a protective guardrail at the location in question was the product of discretionary decisions by state agents. In support of its motion the state submitted the sworn affidavits of DeVerl Peterson, a traffic and safety engineer with the Department of Transportation. According to Peterson, the original project proposal included a number of guardrails that were excluded in the final plan because of funding constraints.

Industrial Indemnity opposed the motion. It submitted evidence indicating that the original proposal called for installation of a guardrail in the area of the accident and that various highway officials had agreed that the suggested installations were appropriate. Industrial Indemnity also submitted a letter from a federal highway official stating that the Glenn Highway guardrail project had been handled in an abnormal fashion. Following oral argument, the superior court granted the state's motion. Industrial Indemnity appeals.[3]

The State of Alaska created a cause of action for contract and tort claims against the state in the Alaska Tort Claims Act of 1962. AS 09.50.250–.300. In the area of tort suits, however, the state did not grant a cause of action for claims arising out of "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion involved is abused . . . ." AS 09.50.250(1).[4] We have termed this statuto-

---

1. AS 23.30.015 states in part:

   (b) Acceptance of compensation under an award in a compensation order filed by the board operates as an assignment to the employer of all rights of the person entitled to compensation and the personal representative of a deceased employee to recover damages from the third person unless the person or representative entitled to compensation commences an action against the third person within one year after an award.

   . . . .

   (i) If the employer is insured and the carrier has assumed the payment of compensation, the carrier shall be subrogated to all the rights of the employer.

2. In part, Industrial Indemnity alleged that the state had notice of the dangerous and slick condition of the highway; failed to repair known defects in the highway's design; failed to install guardrails; and failed to post warning signs.

3. The parties stipulated to dismiss without prejudice "all aspects of plaintiff's complaint . . . save and except that aspect which alleges negligence on the part of the State of Alaska for failure to install guardrails." Judge Moore approved the stipulation and entered a final judgment on July 14, 1981.

4. AS 09.50.250 provides in part:

   *Actionable claims against the state.* A person or corporation having a contract, quasi-contract, or tort claim against the state may bring an action against the state in the superior court. A person who may present his claim under AS 44.77.010—44.77.060 may not bring an action under this section except as set out in AS 44.77.040(c). However, no action may be brought under this section if the claim

   (1) is an action for tort, and is based upon an act or omission of an employee of the state, exercising due care, in the execution of a statute or regulation, whether or not the statute or regulation is valid; or is an action for tort, and based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion involved is abused . . . .

ry immunity the "discretionary function exception" of the tort claims act.

The state contends that it is entitled to immunity for its failure to place a guardrail at the site of John Richey's accident under the discretionary function exception of AS 09.50.250(1). We agree.

We have held that the discretionary function exception applies to government decisions entailing planning or policy formation. *Wainscott v. State,* 642 P.2d 1355, 1356 (Alaska 1982); *Japan Air Lines Co. v. State,* 628 P.2d 934, 936 (Alaska 1981); *State v. I'Anson,* 529 P.2d 188, 193–94 (Alaska 1974). In suits brought under the tort claims act, we have employed a "planning level-operational level" test to distinguish between decisions involving the formulation of basic policy, entitled to immunity, and decisions regarding only the execution or implementation of that policy, not entitled to immunity. *Rapp v. State,* 648 P.2d 110 (Alaska 1982); *Wainscott,* 642 P.2d at 1356–57; *Japan Air Lines,* 628 P.2d at 936; *Jennings v. State,* 566 P.2d 1304, 1311 (Alaska 1977); *I'Anson,* 529 P.2d at 193; *State v. Abbott,* 498 P.2d 712, 721 (Alaska 1972).

■ The planning level-operational level test must be applied in consideration of the policies underlying the discretionary function exception of Alaska's Tort Claims Act. *I'Anson,* 529 P.2d at 193 (Alaska 1974); *Abbott,* 498 P.2d at 721. *See Wainscott,* 642 P.2d at 1356. The principal policy underlying the tort immunity is to limit judicial re-examination of decisions properly entrusted to other branches of government. *Wainscott,* 642 P.2d at 1356; *Japan Air Lines,* 628 P.2d at 936; *I'Anson,* 529 P.2d at 193. *See also Johnson v. State,* 69 Cal.2d 782, 73 Cal.Rptr. 240, 447 P.2d 352, 360

(1968) (en banc). The courts will refrain from second-guessing the legislative and executive branches on issues of basic policy. Under our system of separation of powers, such decisions are vested in the politically responsive coordinate branches. Thus, in applying the test for discretionary function immunity under AS 09.50.250, we will "isolate those decisions sufficiently sensitive so as to justify judicial abstention." *Wainscott,* 642 P.2d at 1356.

In addition, courts must not intrude into realms of policy exceeding their institutional competence. The judicial branch lacks the fact-finding ability of the legislature, and the special expertise of the executive departments. We have consistently held that the courts of Alaska should not attempt to balance the detailed and competing elements of legislative or executive decisions. *Wainscott,* 642 P.2d at 1356; *I'Anson,* 529 P.2d at 193 n. 20; *Abbott,* 498 P.2d at 721. *See* Reynolds, The Discretionary Function Exception of the Federal Tort Claims Act, 57 Geo.L.J. 81, 121–23, 128–31 (1968); Jaffe, Suits Against Governments and Officers: Damage Actions, 77 Harv.L. Rev. 209, 235–36 (1963).

Turning to the case at hand, the superior court rested its ruling on the ground that the state had never decided to install a guardrail at Long Lake Hill. The court reasoned that the question of whether or not to install a guardrail at the accident site was one of policy,[5] and that an affirmative decision to go ahead with the installation had to be made at the discretionary level in order to advance the chain of events to the operational stage.[6] We agree with both parts of the superior court's analysis.

---

**5.** In reaching its decision the trial court relied upon *Jennings v. State,* 566 P.2d 1304 (Alaska 1977), in which we upheld summary judgment in favor of the state against the claim that it had been negligent in failing to erect an overpass at an intersection area near an elementary school. *Id.* at 1311.

[W]e are of the view, and so hold, that decisions whether or not to build one or more overpasses in the area of the intersection of College Road and Joy Street, whether or not to designate the subject intersection area as a

school zone, and whether or not to undertake any other safety measures at the intersection in question or at other areas of College Road, were governmental decisions which have rightly been characterized as planning level decisions, and thus within the ambit of the statutorily created discretionary function exception to the state's tort liability.
566 P.2d at 1311–12 (footnote omitted).

**6.** At the hearing on summary judgment, the court said that, "In this case, there was no decision. Or if there was one, they decided not

In our recent decisions in *Rapp v. State*, 648 P.2d 110 (Alaska 1982), and *Wainscott v. State*, 642 P.2d 1355 (Alaska 1982), this court held that the state's failure to install sequential traffic signals at two intersections were planning-level decisions immune from negligence liability. In *Wainscott*, we observed that:

There are undoubtedly numerous intersections throughout the state where known traffic hazards could be significantly reduced by the installation of more sophisticated traffic control devices. Available funding, however, requires that the Department of Transportation select among these locations in deciding where to make improvements . . . .

. . . .

If we were to assess the propriety of this decision, we would be engaging in just the type of judicial review that the discretionary function exception seeks to prevent. The selection of a traffic control device for the New Seward—O'Malley intersection was not a purely ministerial decision implementing a preexisting policy, but rather a decision that called for policy judgment and the exercise of discretion.

642 P.2d at 1357. *Accord, Rapp,* 648 P.2d at 110; *Jennings,* 566 P.2d at 1311–12. We think that the state's failure to install a guardrail at mile post 86.4 of the Glenn Highway is analogous to its failure to place traffic signals at the intersections in *Rapp* and *Wainscott.* Both types of decisions involve planning, an assessment of competing priorities, and a weighing of budgetary considerations.[7] There is no dispute that the proposed Glenn Highway guardrail installations were cut back because of a lack of funding from the Department of Transportation.[8] Decisions regarding the allocation

to put [the guardrail] in. Either way it still hasn't gotten to the point where there was anything further done in terms of operating that decision . . . ." The court concluded that the issue of a guardrail for Long Lake Hill never went beyond the planning stage: "It doesn't get to an operational stage because there's no . . . installation of a guardrail."

In other cases it has been held that, where the state made the planning level decision to assume a certain duty, it becomes liable for the operational negligence of its employees in the ministerial tasks of carrying out that duty. Thus, in *State v. Abbott,* 498 P.2d 712 (Alaska 1972), we held that when the state determined it would maintain the highways it rendered itself responsible for the daily decisions made in executing that policy. *Id.* at 722. *See also State v. I'Anson,* 529 P.2d 188, 193–94 (Alaska 1974). In *Japan Air Lines Co. v. State,* 628 P.2d 934 (Alaska 1981), the state had undertaken the duty to build an airport taxiway capable of servicing widebody jets. *Id.* at 937 n. 2. We held the state subject to suit for its alleged negligence in designing the taxiway. In other cases where it was found that the state had not assumed a duty this court posited facts which might have altered its decision. In *Jennings v. State,* 566 P.2d 1304 (Alaska 1977), it was held that the state could not be found liable for its failure to build an overpass at an intersection near an elementary school. We noted, however, that had the school board made the planning level decision to designate the intersection as part of a "school zone," and had the state then been negligent in placing signs or constructing a cross-walk, we might

conclude that a cause of action arose from the negligently performed operational acts. *Id.* at 1312 n. 30. In *Wainscott v. State,* 642 P.2d 1355 (Alaska 1982), although we held the state immune from suit for its failure to place a sequential traffic light at an intersection, we noted that a cause of action might lie for any operational negligence in designing or positioning the flashing lights which had been built at the intersection. *Id.* at 1357 n. 4.

7. DeVerl Peterson, Department of Transportation Traffic and Safety Engineer for the Central Region, described the procedure for determining which guardrails would be built:

[T]he decision to install or not install guardrails in the Central Region is made by the Commissioner or Deputy Commissioner based upon recommendations of the Department of Transportation by planning level personnel . . . . [T]he decision is made by the Director after an evaluation or, [sic] among other aspects, budget, alternate needs, alternate priorities, funds available from either the State of Alaska or the Federal Government and review and analysis of warrants as they are applied to the different needs of the State Highway system.

8. Department of Transportation Engineer Peterson stated in his affidavit that "the project was reduced because of lack of funding from the Commissioner's office. To obtain this funding we must compete with all other districts within the State of Alaska." Industrial Indemnity responds that "[e]conomic factors, such as availability of men and equipment, will

of scarce resources are usually discretionary, and thus immune from judicial inquiry. *Wainscott,* 642 P.2d at 1357 n. 6. *See Bearce v. United States,* 614 F.2d 556, 561 (7th Cir.1980), *cert. denied,* 449 U.S. 837, 101 S.Ct. 112, 66 L.Ed.2d 44 (1980).[9] The state produced a calculation that to install a guardrail at Long Lake Hill would now cost at least $425,000.00. DeVerl Peterson, Department of Transportation Traffic and Safety Engineer for the Central Region, stated in his first affidavit that "this particular mile and one-half stretch of the Glenn Highway is not unique and that the installation of guardrails on similar sections of highway on the Glenn Highway alone would require the expenditure of several tens of millions of dollars." There is a factual dispute concerning the state's figures, and Industrial Indemnity maintains that the cost of guardrails in 1969 (when the Glenn Highway project was first under consideration) was only one-fifth of the present-day estimates made by the state. Even resolving this question in a manner most favorable to Industrial Indemnity, it remains clear that guardrails are expensive, and that a decision by the state to place guardrails along the Glenn Highway would necessarily affect the state's ability to provide other governmental services. We would be engaging in precisely the type of policy evaluation that the discretionary function exception is designed to foreclose if we were to inquire into the wisdom of the state's guardrail policy in this case.

Although the foregoing discussion is adequate to dispose of the case at bar, appellant raises an additional argument that warrants comment. Industrial Indemnity does not claim that an affirmative decision was ever made to place a guardrail at Long Lake Hill. It maintains, however, that the state undertook to carry out a "guardrail project" on the Glenn Highway, that the state commissioned engineers to determine where guardrail installations would be appropriate, that these engineers formulated a project proposal based upon empirical warrant standards, and that the state did build many of the guardrails as recommended in the original project proposal. Industrial Indemnity claims that somewhere in this sequence of events the state assumed a duty to erect certain guardrails determined to be appropriate in the engineering survey.[10] Once this duty was created, the ultimate decision of where to place individual guardrails was made by project engineers, who had to choose among the proposed installations due to incomplete funding. Industrial Indemnity argues that the engineers' final selections were operational decisions made to implement the general policy of the guardrail project, and that the state may thus be held liable for their

always be factors in negligence cases against the State ... but that does not immunize every decision involving such factors from judicial review."

**9.** In *State v. Morris,* 555 P.2d 1216, 1219 (Alaska 1976), we said that:

It is the duty of the executive and legislative branches of government, and not the judiciary, to allocate money, personnel and other resources to the various departments, to instruct them in their various tasks and to determine the priorities of competing governmental policies in the absence of general legal mandates.

**10.** It is not entirely clear which guardrails Industrial Indemnity believes the state became obligated to build. Industrial Indemnity does not claim that the project engineers were bound to accomplish the impossible task of erecting *all* of the guardrails in the original project proposal in spite of the cut-back in funding. To prevail on its claim, Industrial Indemnity would presumably have to be successful in showing that the guardrail at Long Lake Hill should have been built instead of a guardrail that actually was built at another site. The state engineers' decision to substitute another guardrail for the one at Long Lake Hill would have to have been so unjustifiable as to constitute negligence. One of the basic flaws of Industrial Indemnity's argument is that it can suggest no criteria which the courts could use to determine whether the guardrails actually built were the right ones or the wrong ones. Even with respect to Long Lake Hill, appellant makes no specific allegations which would support its claim of ministerial negligence. Appellant's contention is simply that it does not know how the decision was reached to omit the Long Lake Hill guardrail, and that it should be allowed to go to trial in order to find out. Once again, we think that such an inquiry would ultimately involve the weighing of factors that the courts are not equipped to consider.

determinations with respect to particular installations. A necessary extension of this argument is that the state is vulnerable to suit with respect to every site on the highway where the original project proposal called for a guardrail, but where no guardrail was ever installed. We think that Industrial Indemnity's theory cannot co-exist with the rule of law that budgetary decisions are immune from suit under the discretionary function exception of the tort claims statute. The Department does not make decisions on a guardrail-by-guardrail basis, but the necessary consequence of its determination to allocate less money to the project was that fewer guardrails would be built. We do not think that a decision by the Department to fund only a portion of a proposed project renders the state vulnerable to lawsuits with respect to every proposal not carried out. This would be the result of allowing private individuals to claim that specific omissions were the product of improper decision-making. We therefore hold that, once it is determined that the decision at issue is of the type entrusted to the planning level of government, a claimant must show that an affirmative assumption of duty has been made by the state in order to have a claim for relief for alleged operational negligence in performing that duty.[11]

11. We therefore disagree with the contention made by Industrial Indemnity that the burden is upon the state, when claiming discretionary function immunity, to show how an individual decision was made. Industrial Indemnity cites cases from other jurisdictions which require the state to show that a considered policy evaluation actually took place. See King v. City of Seattle, 84 Wash.2d 239, 525 P.2d 228, 233 (1974) (en banc), (discretionary function immunity not specifically provided by statute); Johnson v. State, 69 Cal.2d 782, 73 Cal.Rptr. 240, 447 P.2d 352, 361 n. 8 (1968) (en banc). Whatever the merits of such a rule, we think it is precluded in Alaska by the present wording of AS 09.50.250(1). While we have remarked occasionally in the past upon the varied elements of policy weighed by the legislature in reaching a protected decision, we have done so only to illustrate the kinds of competing factors which lie behind determinations of policy, and to demonstrate that the courts are an inappropriate forum in which to re-evaluate those determinations. See Wainscott, 642 P.2d at 1357.

In regard to the above, see Rapp v. State, 648 P.2d 110, 111 n. 3 (Alaska 1982) where we observed:

We conclude that the decision whether or not to build a guardrail at the site of John Richey's accident on the Glenn Highway was within the ambit of the discretionary function exception of AS 09.50.250(1). Thus, the decision below granting summary judgment to the State of Alaska is AFFIRMED.

MATTHEWS, Justice, joined by BURKE, Chief Justice, dissenting.

In deciding whether the discretionary function exception of AS 09.50.250 applies, it seems to me that we should assume that negligence on the part of the state exists. By doing this we can guard against the easy tendency to confuse the absence of negligence with immunity as a reason for decision. Such confusion can have the effect of creating erroneous precedents.

Confusion of this nature appears to be present in Jennings v. State, 566 P.2d 1304 (Alaska 1977), where we held that the state's failure to provide a crosswalk several hundred feet from an intersection near which a grade school was located came within the discretionary function exception. We noted that at the intersection nearest the school a crosswalk had been built, an

Rapp argues that this case differs from Wainscott because the evidence to be presented at trial would show that the state failed to carry out current traffic condition tests and that the criteria set forth in the Alaska Traffic Manual for evaluating traffic control devices indicated that a sequential traffic signal was needed at the intersection of Muldoon Road and Northern Lights Boulevard. Even assuming that Rapp could prove at trial that a sequential signal would have been appropriate, however, we hold that the state's failure to upgrade the traffic control device at the intersection was a planning level decision immune from liability. "[N]o action may be brought ... based upon ... the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion involved is abused." AS 09.50.250(1) (emphasis supplied). See, e.g., Jennings v. State, 566 P.2d 1304, 1311–12 (Alaska 1977).

electronically controlled traffic signal had been placed, and school crossing guards were usually present. *Id.* at 1307. We stated:

Of controlling significance, in our view, is the fact that the child was struck ... at a point some three blocks away from the [intersection nearest the school at which crossing safety measures had been taken].

*Id.* at 1312. The fact that the state had provided safe passage across the busy road at the point nearest the school is significant to the issue of whether the state fulfilled its duty to use reasonable care to provide safe pedestrian crossings. However, it is difficult to see how this fact bears at all on whether the state's decision not to build a crosswalk where the accident happened was of a planning rather than an operational nature.

The majority's opinion in the present case also seems to confuse the absence of negligence with immunity. Thus the opinion quotes a highway engineer's affidavit that the particular stretch of highway involved here "is not unique." (Maj. op. 565). Further, the opinion notes:

It is not entirely clear which guardrails Industrial Indemnity believes the state became obligated to build. Industrial Indemnity does not claim that the project engineers were bound to accomplish the impossible task of erecting *all* of the guardrails in the original project proposal in spite of the cutback in funding. To prevail in its claim, Industrial Indemnity would presumably have to be successful in showing that the guardrail at Long Lake Hill should have been built instead of a guardrail that actually was built at another site. The state engineers' decision to substitute another guardrail for the one at Long Lake Hill would have to have been so unjustifiable as to constitute negligence. One of the basic flaws of Industrial Indemnity's argument is that it can suggest no criteria which the courts could use to determine whether the guardrails actually built were the right ones or the wrong ones. Even with respect to Long Lake Hill, appellant makes

no specific allegations which would support its claim of ministerial negligence. (Maj. op. 565 n. 10) These statements strongly suggest the absence of negligence under the facts as presented.

Assume, however, that there was evidence that Long Lake Hill was unique in that it was especially unsafe because of some combination of narrow shoulders, steep dropoffs, curves and traffic usage patterns. Assume also that there had been numerous fatalities on the hill of which the state had notice and that the other locations on the Glenn Highway where guardrails in fact were placed as a part of the guardrail project were places where special hazards did not exist and no history of fatal accidents was present. Under such circumstances there would be, to use the terms of the majority opinion, criteria which could be used to determine that the guardrails in the guardrail project were built in the wrong place. Thus, even though the arguably discretionary nature of the decision not to place guardrails on Long Lake Hill is the same under the facts actually presented as it is in my hypothetical, one may question whether the majority would conclude that discretionary immunity would apply if a clear case of negligence had been presented.

In my opinion, the only immune discretionary decision involved in this case was the decision to own and maintain a highway system. Once that decision was made the state no longer had discretion to fail to use due care to assure that its highways were reasonably safe. In *State v. I'Anson,* 529 P.2d 188 (Alaska 1974) we held that the state is under a duty to use reasonable care to keep its highways in safe condition for the reasonably prudent traveler. *Id.* at 195. In order to fulfill this duty the state may be required to place appropriate signs or paint no passing barrier stripes on a highway and we held that the failure to do either was not protected under the discretionary function exception. *Id.* at 193–94. Similarly, in *Johnson v. State,* 636 P.2d 47 (Alaska 1981) we held that the failure to post a "non-standard" sign to warn that a railroad crossing posed particular hazards to bicyclists was

not shielded by the discretionary function exception. *Id.* at 66.[1] In *Japan Airlines Co., Ltd. v. State,* 628 P.2d 934 (Alaska 1981) we held that the alleged failure of the state to build an airport taxiway having a width meeting certain safety standards was not immune. We stated:

In the present case, the state undertook the task of providing the traveling public with a taxiway designed for use by wide-body jets. In so doing it also assumed the responsibility of designing, constructing, and maintaining the taxiway safely. Once the state made the decision to build the taxiway, the discretionary function exception did not protect it from possible negligence liability in the operational carrying out of the basic policy-planning decision to build the taxiway.

*Id.* at 937 n. 2.

In my opinion this case cannot be distinguished in any principled way from *I'Anson, Johnson,* or *Japan Air Lines.* Just as it costs money to erect signs, paint no passing stripes, and build wider taxiways, it also costs money to construct guardrails. However, once the state undertakes to own and maintain a highway system, its obligation is to use reasonable care to keep its highways in safe condition. In certain areas appropriate signs, highway stripes, or guardrails may be required in order to fulfil this duty. If so, the failure to take such precautions is not immunized by the discretionary function exception.

A closely analogous case is *State v. Webster,* 88 Nev. 690, 504 P.2d 1316 (1972). There, the Supreme Court of Nevada held that the failure of the state to construct a cattle guard which would have served to prevent livestock from straying onto a controlled access highway was not protected by the discretionary function exception. The court stated:

In *Pardini v. City of Reno,* 50 Nev. 392, 401, 263 P. 768, 771 (Nev.1928) this court

said: "[W]here a railing or barrier is reasonably necessary for the security of travelers on the street, which from its nature would otherwise be unsafe, and the erection of which would have prevented the injury, it is actionable negligence not to construct and maintain such railing or barrier." The possibility of liability by the city in that case was not predicated on its failure to construct a guardrail in accordance with a plan, but on its failure to construct one at all. The failure of the city to construct a guardrail . . . as the failure of the State in this case to install a cattle guard at the entrance to the controlled access freeway, came at the operational level, after the discretionary decision had been made. Where a cattle guard is reasonably necessary for the security of the traveling public on a controlled access freeway, the failure to install it renders the State amenable to suit.

*Id.* 504 P.2d at 1319.

Also instructive are two California cases. In *Ducey v. Argo Sales Co.,* 25 Cal.3d 707, 159 Cal.Rptr. 835, 602 P.2d 755 (1979) the Supreme Court of California held that the State of California was liable for failing to place a median barrier on a busy freeway. *Id.* 602 P.2d at 759–63. This conclusion was reached largely on the authority of *Baldwin v. State,* 6 Cal.3d 424, 99 Cal.Rptr. 145, 491 P.2d 1121 (1972), which held that the design immunity provision of California Government Code § 830.6 did not shield the state's failure to provide a needed left turn lane at a busy intersection. The *Baldwin* opinion makes it clear that design immunity under California law is based on the same considerations as immunity for discretionary governmental functions. *Id.* 491 P.2d at 1124, 1125 n. 6, 1128, 1129 n. 9. In *Baldwin* the court noted that the duty to correct dangerous highway conditions could encompass

---

1. In *Johnson* we also noted certain examples of discretionary and nondiscretionary action including:

discretionary to establish a post office at a particular location, but not to negligently fail to establish handrails; . . .

*Johnson v. State,* 636 P.2d 47, 65 n. 38 (Alaska 1981) (quoting *State v. Abbott,* 498 P.2d 712, 722 n. 29 (Alaska 1972)).

such devices as "warning signs, lights, barricades or guardrails...." *Id.* 491 P.2d at 1130.

*Wainscott v. State,* 642 P.2d 1355 (Alaska 1982) is distinguishable from the present case because a discretionary decision was made there that the highway in question was to be utilized for through traffic.[2] It would obviously be inconsistent with such a decision to require the construction of a stop signal. *Rapp v. State,* 648 P.2d 110 (Alaska 1982) (per curiam) can be distinguished on the same basis.

For the above reasons I would reverse the decision of the superior court and remand this case for trial.

**2.** The decision as to what type of highway a highway will be is commonly recognized as discretionary. *See, e.g., Urow v. District of Columbia,* 316 F.2d 351 (D.C.Cir.1963) (per curiam); *State v. Webster,* 88 Nev. 690, 504 P.2d 1316, 1319 (1972).