ESTATE OF Adam ARROWWOOD, By and Through Joyce LOEB, personal representative, Terry Arrowwood and Alice Arrowwood, Appellants,

v.

STATE of Alaska, Appellee.

No. S–5667.

Supreme Court of Alaska.

May 12, 1995.

Michael W. Flanigan, Walther & Flanigan, Anchorage, for appellants.

Venable Vermont, Asst. Atty. Gen., Anchorage, and Bruce M. Botelho, Atty. Gen., Juneau, for appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

RABINOWITZ, Justice.

## I. INTRODUCTION

This appeal arises out of a negligence action filed against the State of Alaska by Alice

Arrowwood, Terry Arrowwood, and the estate of Adam Arrowwood (collectively, the Arrowwoods). The Arrowwoods contend that the State's failure to sand the Parks Highway during icy conditions caused a motor vehicle accident which severely injured Alice Arrowwood and killed her son Adam. After trial the jury returned a special verdict finding that the State was not negligent. Final judgment in favor of the State was then entered. The Arrowwoods appeal from a number of the superior court's pretrial determinations, including a grant of partial summary judgment in favor of the State on the issue of the State's alleged negligent failure to close the highway, and the exclusion of certain evidence sought to be offered by the Arrowwoods.

## II. FACTS AND PROCEEDINGS

On January 23, 1988, at 3:39 p.m., Alice Arrowwood was involved in an automobile accident at Mile 39.5 of the Parks Highway, south of Wasilla. She lost control of her vehicle, which spun across the center lane and struck an oncoming pickup truck. Alice was severely injured and her son Adam, one of the vehicle's passengers, was killed.

At the time of the accident, freezing rain had made the Parks Highway extremely icy. Numerous other accidents occurred at about the same time, including two on the Parks Highway within one-half mile of the site of the Arrowwood crash, at 3:13 p.m. and 3:40 p.m. respectively.

The Arrowwoods filed a negligence suit against the State seeking damages for injuries to Alice Arrowwood and for the death of Adam Arrowwood, amongst other relief. One of the Arrowwoods' claims was that the State negligently failed to close the Parks Highway after receiving notice of numerous accidents on the icy road. The State moved for partial summary judgment on the ground that the decision to keep the highway open

was a discretionary function for which the State was immune from liability under AS 09.50.250(1), the discretionary function exception to the Alaska Tort Claims Act. The superior court granted the State summary judgment on this claim. The superior court also granted a number of the State's *in limine* motions to exclude certain evidence sought to be offered by the Arrowwoods. The Arrowwoods now appeal each of these pre-trial rulings.[1]

## III. DISCUSSION

A. *The Applicability of AS 09.50.250(1)'s Discretionary Function Exception to a Decision to Keep a State Highway Open in Hazardous Conditions*

The Arrowwoods contend that whether the State had a duty to close the Parks Highway because of icy conditions presented a jury question, and that the superior court's grant of partial summary judgment to the State on this question was therefore improper.[2] The State responds that the decision of whether or not to close a state highway due to inclement weather is a discretionary function, and that the State is therefore immune from liability under AS 09.50.250(1).

The Alaska legislature abolished the common law doctrine of sovereign immunity by statute. AS 09.50.250. However, immunity was retained in those cases where the action sounds in tort and is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency." AS 09.50.250(1).

In prior decisions interpreting AS 09.50.250(1), we have held that the discretionary function exception applies only to "government decisions entailing planning or policy formation."[3] These cases distinguish between "planning level" decisions, which fall under the exception because they involve for-

---

1. A jury trial was held on the Arrowwoods' remaining claims in February and March of 1993.

2. When reviewing a superior court's grant of summary judgment, this court determines whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Zeman v. Lufthansa German*

*Airlines,* 699 P.2d 1274, 1280 (Alaska 1985); Alaska R.Civ.P. 56(c). This court draws all reasonable factual inferences from the proffered evidence in favor of the non-moving party. *Zeman,* 699 P.2d at 1280.

3. *Industrial Indem. Co. v. State,* 669 P.2d 561, 563 (Alaska 1983) (citations omitted).

mulation of basic policy, and "operational level" or ministerial decisions, which are not exempt because they involve only the implementation or execution of that policy.[4]

In applying the planning level-operational level test, consideration will be given to the reasons for granting immunity.[5] We have noted that "[t]he purpose of the discretionary function exception is to preserve the separation of powers inherent to our form of government by recognizing that it is the function of the state, and not the courts or private citizens, to govern."[6] The discretionary function exception also ensures that courts avoid the re-examination of decisions which lie outside the realm of their institutional competence.[7] Additionally, this exception gives members of the executive and legislative branches latitude to perform their policy-making functions without the fear of incurring liability.[8]

The State relies primarily on *Earth Movers of Fairbanks, Inc. v. State*[9] in support of its argument that its decision to not close a road due to inclement weather is a discretionary function. *Earth Movers* involved a roadbuilder's contract action for delay damages resulting from a state trooper's decision to lower the speed limit on a road under construction.[10] Because Earth Movers' trucks were forced to slow down, it failed to meet its contractual deadline for completion of the project. In that case we held that the trooper's decision to lower the speed limit on a state highway was a discretionary function and that both the trooper and the State were therefore immune from suit for the resulting consequences.[11]

We agree that *Earth Movers* controls resolution of the superior court's grant of partial summary judgment. In both cases, the state officials involved were required to evaluate the particular road conditions to determine whether a hazard existed sufficient to warrant additional traffic controls. Furthermore, in both cases the relevant statutory and administrative code provisions do not require officials to act to carry out a predetermined policy. Rather the language of these provisions delegates to officials on the scene the authority to act if their evaluation of road conditions leads them to conclude that such action is necessary.[12] We believe

---

**4.** *See, e.g., Industrial Indem. Co.,* 669 P.2d at 562–63; *Japan Air Lines Co., Ltd. v. State,* 628 P.2d 934, 936 (Alaska 1981); *State v. Abbott,* 498 P.2d 712, 718–22 (Alaska 1972).

**5.** *Division of Corrections v. Neakok,* 721 P.2d 1121, 1133 (Alaska 1986); *see also Industrial Indem. Co.,* 669 P.2d at 563; *State v. I'Anson,* 529 P.2d 188, 193 (Alaska 1974).

**6.** *Japan Air Lines,* 628 P.2d at 936; *see also Industrial Indem. Co.,* 669 P.2d at 563 ("[T]he courts of Alaska should not attempt to balance the detailed and competing elements of legislative or executive decisions.").

**7.** *Industrial Indem. Co.,* 669 P.2d at 563 ("The judicial branch lacks the fact-finding ability of the legislature, and the special expertise of the executive departments.").

**8.** *See Neakok,* 721 P.2d at 1133; *see also Haddock v. New York,* 75 N.Y.2d 478, 554 N.Y.S.2d 439, 443, 553 N.E.2d 987, 991 (1990) ("[T]his immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury.").

**9.** 691 P.2d 281 (Alaska 1984).

**10.** The trooper was responding to complaints that the contractor's trucks were causing a hazard by "stirring up excessive dust and causing rocks to hit the windshields of other drivers." *Earth Movers,* 691 P.2d at 282.

**11.** *Id.* at 284.

**12.** Alaska Statute 19.10.100 grants the State Department of Transportation and Public Facilities (DOT) discretion to close state highways:

> When it is necessary to exclude traffic from any portion of a highway, *the department may close* that portion of the highway by posting in a conspicuous manner, at each end of the portion closed, suitable signs warning the public that the road is closed under authority of law, and by erecting suitable obstructions.

(Emphasis added.) Likewise, 17 AAC 25.100(a) states that DOT *"may prohibit* the operation of vehicles upon any highway ... whenever it is deemed necessary by the commissioner in the interests of safety to the traveling public." (Emphasis added.)

The relevant regulations in *Earth Movers* are reprinted at 691 P.2d at 283 n. 1. *Cf. Abbott,* 498 P.2d at 722 n. 30 (the presence of detailed standard operating procedures as to when and how to sand highways buttressed the court's conclu-

that such a decision could not be classified as merely ministerial or operational.

The policies supporting the discretionary function exception also suggest that governmental immunity is appropriate. If we ruled otherwise, the result would be that state officials would be forced to close state highways upon receiving notice of the first accident which resulted from adverse weather and road conditions, or else risk incurring liability for failure to do so. Given the long winters and harsh weather conditions which occur throughout most of Alaska, such a decision would make road travel at best unreliable. We therefore hold that the State's refusal to close the Parks Highway was a planning-level decision which falls within the ambit of the discretionary function exception provided for in AS 09.50.250(1). Accordingly, the State is immune from liability and the superior court properly granted partial summary judgment to the State on this issue.

**B.** *The Exclusion of Evidence Pertaining to Budget Reductions for Road Maintenance*

■ The Arrowwoods next contend that the superior court abused its discretion by excluding evidence relating to the effect of reductions in DOT's budget upon the level of road maintenance in the Palmer–Wasilla region.[13] The Arrowwoods argue that this evidence is "relevant to show the reasonableness of the state's road maintenance program, and whether sufficient resources were being allocated to that purpose to perform the maintenance program in a non-negligent fashion." [14]

It is well established that both legislative appropriations and executive department budget decisions are discretionary functions immune from judicial inquiry. This is because both concern the allocation of scarce resources between and among competing policy measures. For example, in *Freeman v. State* [15] we held that the State was immune from liability for not allocating sufficient funds to provide dust control on the Dalton Highway. In *Freeman,* we reasoned that "[t]he decision appears to be one involving such basic policy factors as the cost of such a program, alternative uses for the money that would be needed for such a program, and the physical and environmental detriments which would be inherent in the several dust control alternatives under consideration." [16] Similarly, the proper focus of the present case is not the budgetary decisions of the legislature, or the DOT's allocations of resources to the Palmer Maintenance District,[17] but rather what the Palmer Maintenance District did with the resources that it received.

The Arrowwoods present no way to distinguish the effect of the budget decisions here from the effect of budget decisions in any other tort claim where the State is a defendant. Thus, the general rule placing budget decisions among immune discretionary functions applies here. Because the Arrowwoods could not premise a finding of negligence on an immune decision, the superior court could properly exclude their evidence regarding budget cuts on the grounds that this evidence was not relevant.[18] *See* Alaska R.Evid. 402.

---

sion that this decision was operational rather than policy-making).

**13.** This court reviews the superior court's decisions on the admissibility of evidence for an abuse of discretion. *Hutchins v. Schwartz,* 724 P.2d 1194, 1197 (Alaska 1986).

**14.** In *Abbott* we held that "[o]nce the basic decision to maintain [a] highway in a safe condition throughout the winter is reached, the state should not be given discretion to do so negligently." *Abbott,* 498 P.2d at 722. Thus, the Arrowwoods' claim that the State negligently maintained the Parks Highway was not barred by AS 09.50.250(1).

**15.** 705 P.2d 918 (Alaska 1985).

**16.** *Id.* at 920; *see also Industrial Indem. Co.,* 669 P.2d at 564–65; *Wainscott v. State,* 642 P.2d 1355, 1357 n. 6 (Alaska 1982).

**17.** DOT allots funds received from the Legislature to regions and projects according to its long-range plans. *See* AS 19.10.140.

**18.** In the alternative, the Arrowwoods argue that one piece of evidence, an alleged statement by a state trooper that their son "died because of budget cuts," was relevant to the State's contention at trial that Alice Arrowwood caused the accident. However, the jury's special verdict that the State was not negligent rendered moot any issue as to Alice Arrowwood's comparative negligence. Furthermore, the superior court did not abuse its discretion in determining that the

### C. *Exclusion of the Interview with Richard Law*

■ The Arrowwoods' third assignment of error is that the superior court abused its discretion when it granted the State's *in limine* motion excluding the transcript of a recorded interview of Richard Law.[19] The Arrowwoods also argue that the superior court erred by not permitting their experts to rely on the transcript.

Law was a local resident who monitored police radio transmissions on the day of the accident.[20] In the interview, Law stated that he had driven on the Parks Highway during the day and had observed that there were portions covered by "glare ice." Additionally, Law stated that he seems to recall hearing two calls on the radio for sand trucks before the time of the accident. Finally, after the accident Law apparently heard calls for sand trucks and he actually saw the trucks approximately thirty minutes later while going to pick up his daughter from school. The Arrowwoods' highway maintenance and accident reconstruction experts intended to use the interview to "help ... evaluate the condition of the roads [on the day of the accident.]" These experts presumably could also use the interview to help them determine what actions the State took to mitigate the hazardous conditions on the Parks Highway and when these actions were taken relative to the accident.

Despite the fact that the interview transcript is hearsay,[21] the Arrowwoods argue that it is admissible pursuant to Alaska Rules of Evidence 703 and 705.[22] Evidence Rule 703 states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. *Facts or data need not be admissible in evidence, but must be of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.*

(Emphasis added.) [23]

■ Although Rule 703 is meant to expand the breadth of information upon which an expert witness may rely, it is not intended merely to provide a conduit for the admission of otherwise inadmissible evidence.[24] The

---

prejudicial effect of this evidence would outweigh its probative value. *See* Alaska R.Evid. 403.

19. Because the parties failed to designate that portion of the transcript at which the superior court ruled on the Law motion, it is impossible for us to determine the precise reasoning on which Judge Michalski relied. However, we have held that "[t]his court ... may affirm a judgment of the superior court on different grounds than those advanced by the superior court and even on grounds not raised by the parties in the superior court." *Native Village of Eyak v. GC Contractors*, 658 P.2d 756, 758 (Alaska 1983). Therefore, we choose in this instance to apply the Alaska Rules of Evidence *de novo* to determine whether the superior court's ruling should be upheld.

20. According to an affidavit provided by Law, he occasionally plowed snow during the winter and monitored a police scanner to determine when he would be called.

21. The interview transcript is an out of court statement offered for the truth of the matter asserted. Alaska R.Evid. 801(c), 802.

22. For an example of a case where this court upheld the superior court's decision to allow an expert witness to rely on otherwise inadmissible hearsay evidence, see *Norris v. Gatts*, 738 P.2d 344, 351 (Alaska 1987).

23. Evidence Rule 705(a) provides in pertinent part that "[t]he expert may ... disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data [on which they rely]." The only exception to this rule is found in Evidence Rule 705(c), which allows the trial judge to exclude the underlying facts or data if their probative value is outweighed by potential prejudice. Thus, subject to the 705(c) balancing test, if the Arrowwoods' experts should have been permitted to rely on the transcript in forming their opinion, they should also have been permitted to introduce the transcript at trial.

24. *United States v. Scrima*, 819 F.2d 996, 1002 (11th Cir.1987) ("Rule 703 ... is not an open door to all inadmissible evidence disguised as expert opinion."); *see also* Fed.R.Evid. 703 advisory committee's note (warning that the "enlargement of permissible data may tend to break down the rules of exclusion unduly").

In interpreting Alaska Evidence Rule 703, we are guided by cases and commentary interpreting Federal Rule of Evidence 703, which, with the exception of some minor syntactic differences, is the same as its Alaska counterpart.

rule instead recognizes that part and parcel of an individual obtaining expertise in a particular subject area is the ability to distinguish between reliable and unreliable data on which to base his or her conclusion. Thus, the rule accords experts a degree of deference in determining whether specific facts or data are "of a type reasonably relied upon by experts in the particular field." However, as one treatise notes, "the degree of deference that is appropriate varies by subject matter and underlying basis. Closer judicial scrutiny is appropriate, for example, where [the] adequacy [of the information relied upon by the expert] relates to the credibility of human sources who report conventional factual information." [25] This is not because the expert lacks the ability to distinguish between reliable and unreliable information but "[r]ather . . . [because] courts too are skilled and experienced in the task and should be expected to look closely at reliance issues." [26]

As mentioned above, the interview transcript at issue in the present case contains little more than one witness' observations that (1) the Parks Highway was icy on the day of the accident and (2) he did not hear any calls for sanders on the police scanner. These observations do not require technical expertise to be understood by a trier of fact. Thus, the trial court was just as capable of evaluating the reliability of this evidence as were the Arrowwoods' experts. Furthermore, upon reviewing the interview transcript we conclude that the statements contained therein could have reasonably been viewed by the superior court as unreliable for the purpose of evaluating the road conditions at the time and place of the accident.[27] Accordingly, we hold that the superior court did not abuse its discretion in concluding that it was not reasonable for the experts to rely on the Law transcript.[28]

■ Additionally, we note that even if the superior court abused its discretion, its failure to admit the Law transcript would not require reversal of the jury's special verdict. A party appealing the exclusion of evidence must show not only that such exclusion was improper, but that it resulted in prejudice to that party.[29] In the present case, the Arrowwoods have not shown that they have been prejudiced by the exclusion of the Law testimony. Neither of the Arrowwoods' experts

25. 3 Christopher B. Mueller and Laird C. Kirkpatrick, *Federal Evidence* § 357, at 680 (2d ed. 1994).

26. *Id.*

27. As mentioned above, the Arrowwoods' experts intended to use the Law transcript to evaluate driving conditions on the Parks Highway on the day of the accident. However, there were serious deficiencies in its use for this purpose. Although Law had driven on the highway earlier in the day, the relevant issue for purposes of this case is the condition at mile 39.5 of the highway at the time of the accident. Law's statements that the highway was covered with glare ice were based on observations made at 7:00 a.m., approximately eight and a half hours before the time of the accident.

The next time Law was on the highway, "shortly after the accident," he drove past the accident scene. He then saw the sanding truck ahead of him. However, this observation does not demonstrate whether the stretch of highway had been sanded during the interim period, nor would it accord the experts any insight into what the condition of the roads were prior to being sanded.

Finally, with regard to his statements about what he heard on the police scanner, we hold that the superior court could conclude that no

expert could reasonably rely on such testimony to determine what measures were taken by the DOT. First, even if this was a reliable method to determine whether the sanders were called out, it is impossible to determine from the interview transcript whether Law was listening during the whole day and how closely he was paying attention. Second, reliance on this secondhand source of information is simply not reasonable in light of the existence of DOT personnel with firsthand knowledge of whether or not sanders were present on the Parks Highway. For example, Ron Cole, a DOT employee, testified at his deposition that he was on the Parks highway driving a sander during his shift which lasted from 7:00 a.m. to 3:00 p.m.

28. The Advisory Committee's Notes to Federal Rule of Evidence 703 state that "[t]he language [of Rule 703] would not warrant admitting in evidence the opinion of an 'accidentologist' as to the point of impact in an automobile collision *based on statements of bystanders*, since [the] requirement [that the facts or data 'be of a type reasonably relied upon by experts in the particular field'] is not satisfied." (Emphasis added.) *See also Faries v. Atlas Truck Body Mfg. Co.*, 797 F.2d 619, 624 (8th Cir.1986).

29. Alaska R.Civ.P. 61; *Korean Air Lines Co., Ltd. v. State*, 779 P.2d 333, 339–40 (Alaska 1989).

was prevented from testifying, and their opinions at trial were the same as those they gave in depositions taken prior to the motion to exclude the evidence.

### D. *Exclusion of the Testimony of Chris Crouch*

Finally, the Arrowwoods contend that the superior court abused its discretion in excluding the testimony of Chris Crouch. Crouch operated a towing company and snow plow business in the vicinity of the accident.[30] In its oral ruling on the *in limine* motion, the superior court excluded Crouch's opinion testimony as to "the quality of the response of the State of Alaska to inclement weather conditions in the Mat–Su valley."[31]

Alaska Evidence Rule 701 governs the admissibility of opinion testimony by lay witnesses:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally

based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

The Arrowwoods argue that because Crouch ran a towing and snow plowing business, and because she regularly monitored a police scanner radio in the course of this business, she was able to judge the State's normal response time to reports of hazardous conditions.

■ According to the instructions given to the jury, the Arrowwoods had to prove the following elements in order to demonstrate that the State was negligent: (1) that at the time and place of the crash the highway was in a "dangerous condition"; (2) that the dangerous condition caused the crash; (3) that the accident was a foreseeable result of the dangerous condition; and (4) that the State either had notice of the condition and failed to act, or failed to act reasonably in maintaining the road.[32] Crouch had no recollection

---

**30.** Even if we determined that Crouch should have been permitted to testify, the Arrowwoods have failed to carry their burden under Alaska Civil Rule 61 of showing that they have been prejudiced. The party alleging that the failure to admit evidence was prejudicial must designate those portions of the record, including the trial transcript, which are necessary for this court to properly review the issue. Alaska R.App.P. 210(b)(1); *Zerbinos v. Lewis*, 394 P.2d 886, 890 (Alaska 1964). In light of the Arrowwoods' failure to designate the trial transcripts as part of the record on appeal we are unable to conclude that they have been prejudiced and must therefore uphold the jury's verdict.

**31.** In its oral ruling, the superior court specifically limited its exclusion of the Crouch testimony "to the things that are being sought to be kept out." The court further stated that "there may be some testimony from … Crouch that will come in." Thus, the Arrowwoods were not prevented from having Crouch testify as to matters other than those addressed in the State's motion.

Because the Arrowwoods failed to call Crouch as a witness or otherwise make an offer of proof at trial, they have waived any claim regarding the exclusion of testimony on subjects other than "her opinion about the quality of the response of the State of Alaska to inclement weather conditions in the Mat–Su valley." Evidence Rule 103(a)(2); *Adamson v. University of Alaska*, 819 P.2d 886, 889–90 (Alaska 1991). On appeal, we therefore limit our review to the question of whether Crouch's lay opinion testimony was properly excluded.

**32.** With regard to the final element, the reasonableness of the State's efforts, two alternative instructions were given to the jury. Jury Instruction 13 reads:

> Negligence is the failure to use reasonable care. Reasonable care is that amount of care that a reasonably prudent person would use under similar circumstances. Negligence may consist of doing something which a reasonably prudent person would not do, or it may consist of failing to do something which a reasonably prudent person would do.

The jury was also given a negligence per se instruction based upon DOT Standard Operating Procedure 4301–6. This regulation states:

> Sanding crews should be dispatched at the first indication that traffic is having difficulty, with particular attention given to intersections and grades. Maintenance crews in the outlying areas should keep steep grades and sharp curves well sanded, working overtime and at night if conditions warrant. Maintenance foremen must be alert to this condition and plan accordingly, and the employees should be instructed to report for duty when inclement weather threatens. Sanding operations should continue as long as conditions warrant. First priority should be given to hills, intersections and curves. In the vicinity of the more populated areas, sanding crews should be dispatched in sufficient time to provide protection for the early morning and evening traffic proceeding to and from work and school.

regarding the condition of the Parks Highway on the day of the accident. Thus, if Crouch's opinion was helpful to a determination of any fact in issue, it must have been on the fourth element (i.e., the reasonableness of the State's maintenance efforts).

However, the use of Crouch's testimony for this purpose is problematic. The Arrowwoods have never challenged the State's assertion that Crouch had no firsthand knowledge of the State's road maintenance procedures or the resources available for this purpose. Her opinion is instead based on what she has heard over the police scanner combined with her experience on the roads in the course of her business.[33] We believe that this limited information as to the State's highway maintenance practices is not sufficient to satisfy the requirements of Rule 701(a). An evaluation of the reasonableness of the State's efforts must include consideration of numerous other factors such as the resources which are available, the physical area which must be maintained, and the actual procedures used to allocate those resources.[34] Accordingly, we conclude that the superior court did not abuse its discretion in applying Rule 701 to exclude Crouch's lay opinion testimony even as to this issue.

▮ Nor does Crouch's testimony satisfy the requirement of Rule 701(b)—that it be relevant to a fact in issue. To prevail in this action, it is not sufficient for the Arrowwoods to show that the State was sometimes negligent in its maintenance of the Parks Highway. Instead, the relevant inquiry is whether the State was negligent in failing to reasonably maintain the area around mile 39.5 of the Parks Highway on the date of the Arrow-

woods' accident. However, as noted above, Ms. Crouch has no recollection of the road conditions or the State's actions on the day of the accident.[35]

## IV. CONCLUSION

The superior court did not err in granting the State's motion for partial summary judgment as to whether the failure to close the Parks Highway was a discretionary function for which the State is immune from liability. Further, the superior court did not abuse its discretion in excluding evidence of budget reductions for highway maintenance, the interview of Richard Law, or the testimony of Chris Crouch. We therefore AFFIRM the superior court's judgment.

---

**33.** The Arrowwoods state in their brief that they intended to have Crouch testify as to the following: (1) that the State typically does not do winter maintenance on the Parks Highway until the state troopers request such action; (2) that it takes a long time for DOT to respond to state troopers' calls for highway maintenance assistance; and (3) that an intersection close to the accident site was one of the most dangerous in the area.

**34.** The use of police scanner calls as a means to gauge the State's maintenance efforts has the obvious drawback of providing only a limited view of what the State may or may not be doing in this regard. This is because the use of this

data necessarily excludes any information regarding the routine dispatch of sanding trucks where drivers are given instructions personally rather than over a two-way radio.

**35.** Nor would Crouch's testimony prove that the State was negligent per se by violating DOT Standard Operating Procedure 4301–6. As discussed *supra* note 32, this regulation requires that "[s]anding crews should be dispatched at the first indication that traffic is having difficulty, with particular attention given to intersections and grades." However, by responding to state troopers' calls, the State is complying with the requirements of the regulation, not violating it.