*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| RAMSEY BARTON, | ) | |
| | ) | Supreme Court No. S-17691 |
| Appellant, | ) | |
| | ) | Superior Court No. 3VA-18-00016 CI |
| v. | ) | |
| | ) | O P I N I O N |
| CITY OF VALDEZ, | ) | |
| | ) | No. 7579 – January 21, 2022 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Valdez, Patrick J. McKay, Judge.

Appearances: Cris Rogers, Rogers & Wirschem LLC, and Brian Heady, Law Office of Brian Heady, Anchorage, for Appellant. Michael D. Corey and Laura S. Gould, Brena, Bell & Walker, P.C., Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

BORGHESAN, Justice.

## I.    INTRODUCTION

Ramsey Barton sued the City of Valdez after she was severely injured by falling from a tire swing overhanging a cliff in an undeveloped area of a city park. The swing was not built by the City, and Barton alleged the City was negligent in failing to remove it. The superior court assumed on summary judgment that the City had imputed

knowledge of the swing. Yet it concluded that because there was no evidence the City had a policy to inspect or remove hazards from undeveloped areas of the park, the City was entitled to discretionary function immunity. The court therefore dismissed Barton's lawsuit against the City.

The purpose of discretionary function immunity is to prevent "judicial intrusion on the policy-making powers committed to the legislative and executive branches."[1] Because there are no conceivable policy reasons for declining to remove the unauthorized swing — a human-made hazard that was known, easily accessible, and simple to remove — the failure to remove it is not protected by discretionary function immunity. We therefore reverse the superior court's decision and remand for further proceedings.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

The Dock Point Trail is a short loop trail located near Valdez.[2] From the trailhead, the trail moves up a short steep hill before dropping down to a small meadow; from there, wooden boardwalks lead to two viewing platforms overlooking Harbor Cove and the Port of Valdez to the south. These platforms are known as the East and West Overlooks. The trail then loops back to the trailhead after a gradual descent. The map

---

[1]    *Haight v. City & Borough of Juneau*, 448 P.3d 254, 257 (Alaska 2019).

[2]    This recreation area is described in different ways by materials in the record. The City of Valdez Parks & Recreation Department refers to it only as the "Dock Point Trail" in its Summer Trail Map Guide (as of April 2015). A photograph showed that there was an official sign in 2016 that called the area "Dock Point." A 2019 travel guide also referred to the area as "Dock Point Park." Because of this factual discrepancy, we refer to the recreation area overall as "Dock Point Area" and the marked main trail as "Dock Point Trail."

of the trail shows no side trails or paths off this loop other than a private road to the east, which is marked by a locked gate and "no trespassing" signs.

The trail is gated and marked by a sign. Part of the trail is a treated timber walkway over marshland. The City's maintenance department erects summer signage, including "Bear Aware" signs and interpretive signs that discuss the flora and fauna in the area. A substantial portion of the trail is on a roadway, which the City maintains. The maintenance department also clears brush from the main trail and maintains the wooden structures (e.g., fence lines and decking) on and along the trail.

About 73 yards away from the East Overlook is a clearing with a bluff. The path to the clearing, while not an official part of the trail, is well worn and trampled; but unlike the trail to the East Overlook, there is no boardwalk, handrail, or fence built on it. At the time of Barton's injury, a tire swing hung by a bright red rope from a tree in the clearing; the tire could swing out beyond the edge of the bluff. The City did not install the tire swing.

In May 2015 Barton, then a junior at Valdez High School, was at Dock Point Area with three of her friends. The group went to the clearing, where Barton stood by the edge of the bluff and took pictures of the view. Meanwhile, one of her friends climbed onto the tire swing, which another friend then started pushing. The friend on the swing bumped into Barton, who was still taking pictures. Barton fell over the bluff and approximately 70 feet down to the rocks and water below. She suffered serious injuries that have left her partially paralyzed and in a wheelchair.

After rescuing Barton, a police officer went back to the scene and took follow-up photographs. By the time he had returned to the scene, the Valdez Fire Department had removed the tire swing.

### B. Proceedings

Barton sued the City, alleging that it was liable for her injuries due to its negligent failure to take down the tire swing. In response the City claimed immunity under AS 09.65.200, which provides immunity from ordinary negligence on "unimproved land." After the parties concluded discovery, the City moved for summary judgment.

Less than a week before oral argument was to be held on the City's summary judgment motion, this court decided *Haight v. City & Borough of Juneau*.[3] In that case we held that the municipal government's decision to not regulate safety on a popular lake was protected by discretionary function immunity.[4] The superior court requested additional briefing on discretionary function immunity, which the parties provided.

At oral argument the City argued that its failure to remove the tire swing was a non-decision protected by discretionary function immunity. Barton argued that the City had an affirmative duty to her to maintain the clearing and abate the tire swing, which was a known hazard for Dock Point Area users. She also argued that any decision to leave the tire swing in place was an "operational" decision outside the scope of discretionary function immunity.

The superior court issued its oral decision on the record. It ruled that there was a dispute of material fact as to whether the City knew of the swing and therefore, for the purposes of summary judgment, assumed that the City had imputed knowledge of its existence. But the court granted summary judgment for the City, observing that there was "no evidence that the City of Valdez maintained anything other than the main trail

---

[3]    448 P.3d 254.

[4]    *Id.* at 259, 261.

and the overlooks[, or] . . . ever considered any policy to inspect, maintain, or remove hazards on any similar situated land or off the trail systems on any city owned land." It reasoned that because the City had not adopted a policy of inspecting and maintaining parts of the Dock Point Area off the developed trail, it could not be held liable for failure to remove the swing. The court made no findings or conclusions about whether the City was immune against negligence occurring on "unimproved land" under AS 09.65.200. Barton moved for reconsideration, which the superior court denied, and now appeals.

## III.   STANDARD OF REVIEW

Whether a particular act or omission is protected by discretionary function immunity is a question of law that we review de novo.[5] Grants of summary judgment are also reviewed de novo.[6] In doing so "[w]e review the facts in the light most favorable to the non-moving party and draw all factual inferences in the non-moving party's favor."[7] The trial court's ruling is affirmed "when there are no genuine issues of material fact and the prevailing party . . . [is] entitled to judgment as a matter of law."[8]

## IV.   DISCUSSION

### A.   A Governmental Decision Is Not Entitled To Discretionary Function Immunity Unless It Is A "Planning" Decision That Implicates Policy Considerations.

Alaska law generally allows damages claims against municipalities but bars claims for damages "based upon the exercise or performance or the failure to exercise

---

[5]     *Steward v. State*, 322 P.3d 860, 862 (Alaska 2014) (citing *Kiokun v. State, Dep't of Pub. Safety*, 74 P.3d 209, 212 (Alaska 2003)).

[6]     *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 516 (Alaska 2014).

[7]     *Jovanov v. State, Dep't of Corr.*, 404 P.3d 140, 145 (Alaska 2017) (quoting *Kalenka v. Jadon, Inc.*, 305 P.3d 346, 349 (Alaska 2013)).

[8]     *Id.* (alterations in original) (quoting *Kalenka*, 305 P.3d at 349).

or perform a discretionary function or duty by a municipality or its agents, officers, or employees . . . ."[9] We refer to this immunity as discretionary function immunity.

The purpose of this immunity is to "preserve[] the separation of powers" — to guard "against judicial intrusion on the policy-making powers committed to the legislative and executive branches."[10] "[T]hese powers include assessing the costs and benefits of a proposed course of action, budgeting, and distributing scarce government resources."[11] Immunizing such actions "prevents the judicial branch from adjudicating the soundness of policy decisions that it lacks the institutional capacity to make."[12] It also "protects public resources against unforeseeable and overwhelming liability that might result from making governmental policy decisions generally subject to damages."[13]

To distinguish those decisions that are protected by discretionary function immunity from those that are not, we have adopted the "planning-operational test."[14] This "test requires courts to 'isolate those decisions sufficiently sensitive' to separation

---

[9]     AS 09.65.070(a), (d)(2); *see also Freeman v. State*, 705 P.2d 918, 920 (Alaska 1985) ("[L]iability is the rule; immunity is the exception.").

[10]     *Haight v. City & Borough of Juneau*, 448 P.3d 254, 257 (Alaska 2019) (citing *Guerrero ex rel. Guerrero v. Alaska Hous. Fin. Corp.*, 123 P.3d 966, 976 (Alaska 2005)).

[11]     *Id.*

[12]     *Id.*; *see also Indus. Indem. Co. v. State*, 669 P.2d 561, 563 (Alaska 1983) ("The judicial branch lacks the fact-finding ability of the legislature, and the special expertise of the executive departments.").

[13]     *Haight*, 448 P.3d at 257.

[14]     *Id.* at 256 (quoting *Japan Air Lines Co. v. State*, 628 P.2d 934, 936 (Alaska 1981)).

of powers concerns and 'protect those decisions worthy of protection without extending the cloak of immunity to an unwise extent.' "[15]

Decisions entitled to protection are "planning" decisions that entail " 'formulation of basic policy' including consideration of financial, political, economic, or social effects of the policy."[16] "[D]ecisions that rise to the level of planning or policy formulation will be considered discretionary acts which are immune from tort liability . . . ."[17]

By contrast, "decisions that are merely operational in nature, thereby implementing policy decisions, will not be considered discretionary" and are therefore "not . . . shielded from liability."[18] "Operational" decisions typically involve the "[n]ormal day-by-day operations of the government."[19] For example, "when a planning decision has been made to follow a particular course of action, decisions carrying out that course of action and governed by . . . standards are unprotected operational decisions."[20] "Such decisions are unprotected because they do not involve policy judgments and

---

[15]     *Id.* at 257 (quoting *Wainscott v. State*, 642 P.2d 1355, 1356 (Alaska 1982)).

[16]     *Steward v. State*, 322 P.3d 860, 863 (Alaska 2014) (citing *Estate of Arrowwood ex rel. Loeb v. State*, 894 P.2d 642, 644-45 (Alaska 1995)).

[17]     *Haight*, 448 P.3d at 256 (quoting *Japan Air Lines Co.*, 628 P.2d at 936).

[18]     *Id.* at 256-57 (quoting *Japan Air Lines Co.*, 628 P.2d at 936).

[19]     *Steward*, 322 P.3d at 863 (quoting *State v. Abbott*, 498 P.2d 712, 720 (Alaska 1972)).

[20]     *Haight*, 448 P.3d at 258.

because reviewing the government's adherence to standards falls within the traditional competence of the courts."[21]

This test is admittedly "somewhat imprecise."[22]  Because almost any act involves some discretion, whether a decision is planning or operational is evaluated in light of its nature and the totality of the circumstances.[23]

Even if the decision challenged is of the planning type — because it involves "consideration of financial, political, economic, or social effects"[24] — it may not be immune if the government has nevertheless affirmatively assumed the duty to act in a certain way.

> [O]nce it is determined that the decision at issue is of the type entrusted to the planning level of government, a claimant must show that an affirmative assumption of duty has been made by the [government] in order to have a claim for relief for alleged operational negligence in performing that duty.[25]

---

[21]     *Id.*

[22]     *Id.* at 257.

[23]     *Id.*

[24]     *Steward*, 322 P.3d at 863 (citing *Estate of Arrowwood ex rel. Loeb v. State*, 894 P.2d 642, 644-45 (Alaska 1995).

[25]     *Indus. Indem. Co. v. State*, 669 P.2d 561, 566 (Alaska 1983); *see also Haight*, 448 P.3d at 259 ("[W]e conclude — as did the superior court — that not regulating lake safety was a planning decision protected by discretionary function immunity.  Absent the assumption of an affirmative duty, the City may not be held liable for the decision not to act.").

Such an assumption of duty need not be express: An assumption of duty may be discerned if the government has adopted regulations or standards requiring it to act in a certain way.[26] Failure to adhere to those regulations or standards would not be immune.

We recently applied this framework in *Haight v. City & Borough of Juneau*.[27] In *Haight* a teenager died in a motorized watercraft accident on Auke Lake, which was managed in part by the municipality.[28] The teenager's mother sued the municipality, claiming that it negligently failed to take measures to ensure the safe operation of motorized watercraft on the lake.[29] The municipality claimed that it was protected from suit by discretionary function immunity.[30] We agreed.[31] We concluded that "not regulating lake safety was a planning decision protected by discretionary function immunity" because it "involved basic policy considerations regarding allocation of scarce resources and which uses to allow."[32] We also considered whether the municipality had nevertheless assumed the duty to regulate lake safety.[33] Observing that state law did not require the municipality to regulate lake safety and that the municipality's own ordinances and land use plans did not address lake safety, we

---

[26] *See Haight*, 448 P.3 at 259-260.

[27] *Id*. at 254.

[28] *Id.* at 255-56.

[29] *Id.* at 256.

[30] *Id.*

[31] *Id.* at 261.

[32] *Id.* at 259-60.

[33] *Id.*

concluded that the municipality had not affirmatively assumed the duty to regulate.[34] For that reason the municipality was immune from liability for its lack of safety regulation at the lake: "Unless dictated by a plan or regulation, the decision not to act is fundamentally discretionary, as are its consequences, because scarce resources mean that not every possible course of action can be funded and because of the threat of unpredictable and overwhelming liability."[35]

Applying this framework to Barton's case, we must first consider whether not removing the tire swing is a planning-type decision — the kind of decision that entails balancing policy considerations. If so, then the City is immune unless it affirmatively assumed the duty to remove the swing. If not, then discretionary function immunity does not apply.

### B. Assuming The City Knew Of The Tire Swing's Existence, Its Failure To Remove The Swing Is Not A Planning Decision Entitled To Immunity.

Determining whether a decision is planning or operational requires first identifying the precise decision at issue. The superior court identified the City's decision as whether to maintain and inspect areas of the park outside of the developed site. It reasoned that although the "removal of hazards" is generally an operational decision, the decision whether to maintain a given area is a planning decision. Absent "evidence that the City of Valdez ever considered whether to inspect and maintain areas off the main Dock Point Trail," the court reasoned that the City's failure to do so was entitled to immunity. But because the superior court assumed for purposes of summary judgment that the City in fact knew of the swing's existence, the more precise way to describe the City's decision is whether to remove a known hazard on the City's property.

---

[34] *Id.*

[35] *Id.* at 260.

Our decisions have recognized that whether to abate a known hazard is often a planning-type decision because it involves policy considerations. In *Estate of Arrowwood ex rel. Loeb v. State* we held that the State's refusal to close a highway due to icy conditions was a planning-level decision entitled to immunity because this decision requires officials to balance safety against the need for reliable transportation.[36] And in *Freeman v. State* we held that although the State had assumed a duty to maintain the Dalton Highway in a safe condition, its decision to forgo dust abatement procedures was entitled to immunity because it involved "such basic policy factors as the cost of such a program, alternative uses for the money . . . , and . . . environmental detriments which would be inherent in the several dust control alternatives . . . ."[37]

The budgetary implications of a decision are often enough to make it a planning decision entitled to immunity. We have held multiple times, for instance, that the State's decision to not install a guardrail is one of policy.[38] We similarly have found

_____

[36] 894 P.2d 642, 646 (Alaska 1995) ("If we ruled [against immunity], the result would be that state officials would be forced to close state highways upon receiving notice of the first accident which resulted from adverse weather and road conditions, or else risk incurring liability for failure to do so. Given the long winters and harsh weather conditions which occur throughout most of Alaska, such a decision would make road travel at best unreliable.").

[37] 705 P.2d 918, 920 (Alaska 1985).

[38] *E.g.*, *Steward v. State*, 322 P.3d 860, 863-64 (Alaska 2014) (finding discretionary immunity applied to State's decision not to reinstall a removed guardrail); *Wells v. State*, 46 P.3d 967, 969 (Alaska 2002) ("[T]he State is immune from suit for claims based on its decision to install or not install guardrails." (citations omitted)); *Indus. Indem. Co. v. State*, 669 P.2d 561, 563 (Alaska 1983) ("[T]he question of whether or not to install a guardrail . . . was one of policy, and . . . an affirmative decision to go ahead with the installation had to be made at the discretionary level in order to advance the chain of events to the operational stage." (footnote omitted)).

that decisions on whether to install sequential stop lights or traffic safety devices were policy decisions and not operational ones.[39]

By contrast, once a decision is made to abate a particular hazard, the decisions involved in implementing that policy are typically deemed operational. In *State v. Abbott* we affirmed a decision that the State was not entitled to immunity for inadequately sanding an icy curve despite a policy of "work[ing] overtime if necessary to keep sharp curves well sanded."[40] We reasoned:

> Once the initial policy determination is made to maintain the highway through the winter by salting, sanding and plowing it, the individual district engineer's decisions as to how that decision should be carried out in terms of men and machinery is made at the operational level; it merely implements the basic policy decision.[41]

Unfortunately "the dividing line between planning and operational decisions may often be hard to discern."[42] Because "almost any act, even driving a nail, involves some 'discretion' . . . decisions made while implementing a planning decision are not

---

**39** *See, e.g.*, *Wainscott v. State*, 642 P.2d 1355, 1357 (Alaska 1982) (holding that decision to not install sequential traffic light at intersection was a planning decision because placement of traffic safety devices depended on priorities set by the Department of Transportation and safety engineers); *Rapp v. State*, 648 P.2d 110, 110-11 (Alaska 1982) (applying *Wainscott* to decision to install stop sign instead of sequential traffic light).

**40** 498 P.2d 712, 716-17 (Alaska 1972).

**41** *Id.* at 722.

**42** *Guerrero ex rel. Guerrero v. Alaska Hous. Fin. Corp.*, 123 P.3d 966, 977 (Alaska 2005).

necessarily unprotected operational decisions."[43] The distinction "depends on the particular circumstances" of the case.[44]

Although the distinction between planning and operational decisions is not always clear, this much seems plain: Assuming the City was aware of the tire swing's existence, the decision whether to remove the swing does not implicate any of the policy considerations that would justify discretionary function immunity. A "decision not to act is protected because limited budgets entail tradeoffs between competing needs — decisions involving basic policy considerations."[45] The City has not identified and we cannot conceive of any policy considerations at play in deciding whether to cut down an easily accessible, unauthorized, and hazardous tire swing.

Taking the evidence in the light most favorable to Barton, as we must on summary judgment, there is no indication that the swing would have been difficult, risky, or expensive to remove. The swing was only 73 yards away from the main trail, and the trail to it was easily visible. The swing consisted of a tire hanging by a rope from a tree. Immediately after Barton was injured, the Fire Department simply cut down the swing. Although it is easy to see how abating some hazards in undeveloped parklands would be expensive, time-consuming, or dangerous for staff — and thus implicate "tradeoffs" and "basic policy considerations"[46] — it is hard to see how abating this particular hazard would do so.

---

[43] *Haight v. City & Borough of Juneau*, 448 P.3d 254, 257 (Alaska 2019) (citing *Abbott*, 498 P.2d at 720; *Kiokun v. State, Dep't of Pub. Safety*, 74 P.3d 209, 218 (Alaska 2003); *Guerrero*, 123 P.3d at 977).

[44] *Id.*

[45] *Id.* at 258.

[46] *Id.*

Furthermore, the tire swing was an unauthorized human-made hazard,[47] as opposed to a natural one or a structure intentionally created to serve the park's purpose. Deciding whether to cut down a particular tree, abate dangerous wildlife, or place signs near scenic but dangerous features like cliffs involves aesthetic, ecological, and recreational tradeoffs that may make these decisions immune.[48] Park managers' decisions about whether to create structures like public use cabins and mountain bike trails may involve similar policy considerations. Such policy considerations are not implicated by this unauthorized and hazardous rope swing.

The superior court correctly reasoned that a government's decision whether to maintain particular areas of parkland or to inspect those areas for hazards is generally a planning decision because it entails "tradeoffs between competing needs — decisions involving basic policy considerations."[49] Holding the state and municipal governments liable for failure to discover hazards in undeveloped areas of parkland would be improper "judicial intrusion on the policy-making powers committed to the legislative

---

[47]     The undisputed evidence is that the City did not install the tire swing. Several city officials including a park maintenance supervisor for the City claimed to not know of its existence.

[48]     *Cf. Lam v. United States*, 979 F.3d 665, 681 (9th Cir. 2020) (observing that the decision to cut down a tree is susceptible to competing policy considerations, including scenery and wildlife preservation); *Chadd v. United States*, 794 F.3d 1104, 1113 (9th Cir. 2015) (observing that the National Park Service's decision to not exterminate a "problematic" mountain goat was susceptible to a policy to protect the animal "to facilitate the public's enjoyment of the species"); *Merry v. Nat'l Park Serv.*, 985 F. Supp. 2d 90, 95 (D.D.C. 2013) (finding that the National Park Service's decision to minimize the amount of signage so "as not to detract from aesthetics of the historic location" of Ford's Theater fell under the discretionary function exception to the Federal Torts Claims Act).

[49]     *Haight*, 448 P.3d at 258.

and executive branches" and could result in "unforeseeable and overwhelming liability."[50] But because the City was deemed aware of the rope swing, the decision facing it was not whether to scour undeveloped areas for unknown hazards; it was whether to remove that particular hazard.[51] That decision is not the type that implicates policy considerations of any kind and thus is not entitled to immunity.[52]

## V. CONCLUSION

We REVERSE the trial court's decision and REMAND the case for further proceedings consistent with this opinion.

---

[50]     *Id.* at 257.

[51]     It is worth noting that the City's Parks Director at the time of the accident testified that the maintenance staff took down unauthorized zip lines that had been set up on City property.

[52]     Given the procedural posture of the case, the superior court correctly assumed, in light of what it described as "contested facts," that the City had "imputed notice" of the tire swing. Our analysis of discretionary function immunity rests on this assumption. We express no opinion whether the City is entitled to discretionary function immunity if it is later found that the City had no notice of the tire swing's existence.